FILED
United States Court of Appeals
Tenth Circuit

August 21, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CARL W. PURSLEY, JR.,

      Defendant - Appellant.

No. 06-1107

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 05-CR-342-REB)**

---

J. Michael Dowling, J. Michael Dowling & Associates, Denver, Colorado, for the
Defendant-Appellant.

James C. Murphy, Assistant United States Attorney (Troy A. Eid, United States
Attorney, and Matthew Kirsch, Assistant United States Attorney, with him on the
brief), Denver, Colorado, for the Plaintiff-Appellee.

---

Before **MURPHY, BALDOCK**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

      Defendant Carl William Pursley, Jr., was charged, along with three

codefendants, (1) with conspiring to retaliate against a witness in violation of 18

U.S.C. §§ 1513(b)(1) and 371 (2005),[1] and (2) with retaliating against a witness in violation of 18 U.S.C. § 1513(b)(1) and aiding and abetting the commission of this crime in violation of 18 U.S.C. § 2. The testimony of a witness named Jessie Cluff had been used to secure a conviction against Mr. Pursley for various tax-fraud offenses. After testifying, Mr. Cluff was brutally beaten in a cell at the courthouse. A video camera captured the attack. Mr. Pursley was convicted on both counts along with his codefendants.

On appeal, Mr. Pursley challenges many of the district court's procedural and evidentiary rulings. Procedurally, Mr. Pursley argues that the district court abused its discretion in refusing to sever his trial from that of his codefendants, in refusing to grant his motions to continue the trial, and in refusing to grant his subpoena requests. With respect to the district court's evidentiary rulings, Mr. Pursley argues that the district court improperly admitted both testimonial hearsay from the victim and an excerpt of Mr. Pursley's opening argument in the tax-fraud case.

We reject each of Mr. Pursley's challenges. Accordingly, we affirm the district court's judgment.

---

[1] Unless otherwise noted, when citing to Title 18 of the United States Code, we cite to the 2005 version, which was in force at the time of the events giving rise to this action.

## BACKGROUND

**A. Factual Summary**[2]

Mr. Pursley and a fellow inmate, Wendel Wardell, were charged under federal law with various counts of tax fraud.[3] *United States v. Pursley*, 474 F.3d 757, 761 (10th Cir.), *cert. denied*, 128 S. Ct. 47 (2007). Mr. Cluff, an inmate who participated in the tax-fraud scheme, testified against Mr. Pursley and Mr. Wardell. Mr. Pursley's attorney described Mr. Cluff as the government's "star witness" in her opening argument. Aplee. Br. Attach. 4, Tr. at 4 (Gov't Ex. 5 (Jury Trial, dated May 16, 2005)) [hereinafter Gov't Ex. 5].

After testifying against Mr. Pursley and Mr. Wardell, Mr. Cluff was assaulted in his holding cell at the federal courthouse in Denver, Colorado. Shawn Shields and Vernon Templeman, also inmates, were in the holding cell with Mr. Cluff. Mr. Shields was the principal assailant. A surveillance camera captured the assault, although it was not equipped for audio surveillance.

Mr. Wardell and Mr. Pursley were in a separate holding cell within the cellblock. Mr. Shields and Mr. Templeman were at the courthouse pursuant to writs

---

[2]    We recount the facts in the light most favorable to the government. *See, e.g.*, *United States v. Franklin-El*, 554 F.3d 903, 908 (10th Cir.), *cert. denied*, 129 S. Ct. 2813 (2009). Mr. Pursley does not challenge the sufficiency of the evidence to support his conviction for the charged crimes.

[3]    Ultimately, the jury found Mr. Wardell and Mr. Pursley guilty, and we affirmed the district court's judgment. *See Pursley*, 474 F.3d 757, 760-61 (10th Cir.), *cert. denied*, 128 S. Ct. 47 (2007); *United States v. Wardell*, 218 F. App'x 695, 696-97 (10th Cir. 2007), *cert. denied*, 129 S. Ct. 284 (2008).

of habeas corpus ad testificandum, so that they could testify on behalf of Mr. Wardell and Mr. Pursley in the tax-fraud prosecution. Both Mr. Shields and Mr. Templeman appeared on the witness lists of Mr. Wardell and Mr. Pursley, but neither was called to testify.

The government indicted Mr. Wardell, Mr. Pursley, Mr. Shields, and Mr. Templeman on two counts: (1) conspiracy to retaliate against a witness, in violation of 18 U.S.C. §§ 371 and 1513(b)(1); and (2) retaliation against a witness, in violation of 18 U.S.C. § 1513(b)(1), and aiding and abetting the commission of this crime, in violation of 18 U.S.C. § 2. The government alleged that Mr. Wardell and Mr. Pursley conspired with Mr. Shields and Mr. Templeman to effectuate the assault on Mr. Cluff as revenge for Mr. Cluff's testimony against Mr. Wardell and Mr. Pursley in the tax-fraud case.

Mr. Wardell and Mr. Pursley proceeded pro se, after waiving their right to counsel before the district court. Mr. Pursley was assisted by advisory counsel, who was later appointed. At trial, the jury heard three days of testimony. Of particular relevance to this appeal is the testimony of four witnesses: (1) Mr. Cluff; (2) Mr. Hoskins, an inmate who was in Mr. Pursley's cell at the time of the assault; (3) IRS Agent Moon, who was in charge of the tax-fraud investigation; and (4) Deputy U.S. Marshal Moltzan, who was on duty at the time of the assault.

## B. Mr. Cluff's Testimony

Mr. Cluff testified that he took part in the tax-fraud scheme for which Mr.

Wardell and Mr. Pursley were prosecuted. At the time, he was serving a 48-year sentence, the result of a long history of felony convictions. Mr. Cluff agreed to cooperate with the government in exchange for immunity. After giving a statement to the IRS, he began to fear for his safety. He expressed his fears in a letter to Agent Moon. A few days prior to his testimony in the tax-fraud trial, Mr. Cluff encountered Mr. Shields in a holding cell at the courthouse. Both Mr. Cluff and Mr. Shields were in full restraints. Although they did not tell each other their names, Mr. Cluff's name was printed on his prison shirt. During a brief exchange, Mr. Shields falsely told Mr. Cluff that he was there on a gun charge.

Mr. Cluff subsequently appeared as a witness against Mr. Pursley and Mr. Wardell at the tax-fraud trial. He informed the jury that he participated directly with Mr. Wardell in filing false tax returns. Mr. Cluff also testified that Mr. Wardell and Mr. Pursley "corresponded during the period of time that those returns were being filed." R., Vol. XII, Tr. at 457 (Jury Trial, dated Dec. 7, 2005). As Mr. Cluff was exiting the courtroom, Mr. Pursley told him, "Good luck." *Id.* at 459 (internal quotation marks omitted). Mr. Cluff interpreted the statement to mean that he "was going to need good luck." *Id.* at 460.

On the day of the assault, which was several days after Mr. Cluff testified against Mr. Pursley and Mr. Wardell, Mr. Cluff was brought to the courthouse. He was placed in a holding cell with Mr. Templeman and two other inmates. Mr. Shields was later placed in Mr. Cluff's cell. Mr. Wardell and Mr. Pursley were in a

-5-

nearby cell.  Before the assault, Mr. Shields yelled down to Mr. Wardell and Mr. Pursley; he thanked Mr. Pursley "for getting him out of CSP."[4]  *Id*. at 465-66.  Mr. Templeman also thanked Mr. Pursley for getting him out of CSP.  In response, Mr. Pursley told Mr. Shields "that there was a reason why he was down there," to which Mr. Shields promptly retorted that "it would be easier than he thought."  *Id*. at 466.  Mr. Pursley further informed Mr. Templeman and Mr. Shields that another prisoner that also was in the cell with them and Mr. Cluff was "cool."  *Id*. at 467.  That prisoner testified at the tax-fraud prosecution, but his testimony did not implicate Mr. Wardell or Mr. Pursley.

At some point, Mr. Cluff overheard Mr. Shields and Mr. Templeman whisper to each other in the back of the cell.  Quickly thereafter, Mr. Shields turned to Mr. Cluff and "told [him] that [his] worst nightmare had come true.  That he was friends with Carl Pursley."  *Id*. at 467.  Mr. Cluff pleaded with Mr. Shields that he never testified against Mr. Pursley.  Mr. Shields refused to believe Mr. Cluff's entreaties, calling him a "lying rat."  *Id*. at 468.  Mr. Shields then said that "the whole purpose of his trip was to get [Mr. Cluff]" and that, if Mr. Cluff had not been shackled during their initial meeting, "they" would have "killed" him.  *Id*. at 469.

Just before the assault, Mr. Shields told Mr. Cluff that "he was going to enjoy this" and that such violence should be inflicted on "all rats."  *Id*. at 470-71.  Mr.

---

4        "CSP" is an acronym for the Colorado State Penitentiary.

Shields then hit Mr. Cluff in the mouth, shattering his dental plate. Although Mr. Cluff could not recall the entirety of the assault, he did remember that, at one point, Mr. Shields warned him "not to try to get help again." *Id.* at 471. Shortly thereafter, Mr. Shields punched Mr. Cluff and "busted . . . open" his eye. *Id.* at 472. The assault lasted for approximately seventy seconds.

When the assault was finally over, Mr. Shields ordered Mr. Cluff to clean himself. Mr. Shields and Mr. Templeman then proceeded to wipe up the blood on the floor. Shortly thereafter, Mr. Wardell yelled down from his cell, telling Mr. Cluff, "That's what you get, you fucking rat." *Id.* at 472 (internal quotation marks omitted). Mr. Wardell further exclaimed, "If you know what's good for you, you better have your mom send me some money." *Id.* (internal quotation marks omitted).

Mr. Cluff testified that he did not signal for help immediately after the assault, for fear that he would incur "another beating." *Id.* at 473-74. Ultimately, he was removed from the cell thirty or forty minutes after the assault and placed in another cell in the same cellblock. At the time of his removal, he asked for medical treatment, but he did not describe to the marshals the origin of his injuries, as he was in "fear [for his] life." *Id.* at 474. He vomited blood during the transfer.

When Mr. Cluff was placed in the new cell, he was in "[s]evere" pain. *Id.* Eventually, he was taken to the hospital for treatment. Mr. Cluff testified that, during his transportation to the hospital, he made statements to the federal marshal

"about what had actually happened in the cell block." *Id.* at 475. The government did not ask Mr. Cluff to describe the content of those statements in his testimony. Mr. Cluff was released from the hospital that same day, after undergoing various tests and receiving stitches.

## C. Mr. Hoskins's Testimony

The government also presented the testimony of Mr. Hoskins, a prisoner who allegedly witnessed Mr. Pursley's involvement in the assault. Mr. Hoskins testified that he was transported to the courthouse on the day of the assault against Mr. Cluff to face charges for several counts of robbery with a deadly weapon. On the way to the courthouse, Mr. Hoskins sat behind Mr. Wardell and Mr. Pursley. Prior to collecting Mr. Shields, Mr. Pursley said to Mr. Hoskins, "We are going to pick up our friend at the FCI [Federal Correctional Institution]. Do you mind scooting over so we can sit with him[?]" R., Vol. XII, Tr. at 570 (internal quotation marks omitted). Mr. Hoskins obliged. As Mr. Shields entered the transportation van, Mr. Pursley, Mr. Wardell, and Mr. Shields "all greeted each other." *Id.* at 573. Mr. Shields then sat next to Mr. Hoskins, and Mr. Pursley conversed with Mr. Shields for nearly the entire approximately one-hour trip. Mr. Wardell occasionally spoke with Mr. Pursley. Because the three men conversed in whispers, Mr. Hoskins was unable to discern the content of these conversations.

Mr. Hoskins testified that when they reached the courthouse, he was placed in a cell with Mr. Wardell and Mr. Pursley. Within five to ten minutes, Mr. Hoskins

heard Mr. Shields ask, "Guess who is in here with me[?]" *Id*. at 576 (internal quotation marks omitted). Mr. Wardell or Mr. Pursley queried, "Who is it[?]" *Id*. (internal quotation marks omitted). Mr. Shields stated, "The guy that's testifying." *Id*. (internal quotation marks omitted). Either Mr. Wardell or Mr. Pursley then retorted, "[H]e is the rat fuck that's testifying against us." *Id*. Mr. Shields just laughed. After some additional conversing, either Mr. Wardell or Mr. Pursley commented, "Shorty will take care of him."[5] *Id*. (internal quotation marks omitted). Either Mr. Wardell or Mr. Pursley then requested "everyone to start making a lot of noise so the guards couldn't hear what was going on in the other cell." *Id*. at 577. "Everyone in the cell," including Mr. Pursley, started talking vociferously "just to make some loud noise." *Id*. at 578.

Mr. Hoskins heard the sounds of the assault over the cellblock din. In particular, he heard Mr. Cluff repeatedly scream, "Help me, somebody help me." *Id*. at 577 (internal quotation marks omitted). According to Mr. Hoskins, a guard arrived at Mr. Cluff's cell approximately thirty to forty-five minutes after the assault. Approximately ten minutes later, Mr. Cluff was removed from the cell. Mr. Hoskins observed Mr. Cluff's injuries; Mr. Cluff was bleeding from his ear and mouth, he had a cut above his left eye, and he vomited blood.

---

[5]     Shorty was Mr. Shields's nickname.

**D. Agent Moon's Testimony**

Agent Moon testified that Mr. Cluff sent her a letter prior to the start of the

tax-fraud case. The letter was introduced into evidence and stated in relevant part:

> I'm writing because I have several questions and concerns
> regarding my saf[et]y, first Wardell has gotten a letter to one
> of his friends here at this facility, so far I have been able to
> handle the problem but once I testify it will be a different
> situation all together . . . . I'm not concerned about Wardell
> but Mr[.] Pursley and the people he is connected with scare the
> hell out of me so I need to know where I stand in all of this[.]
> I don't know if you understand I can't hide from Carl [Pursley]
> and his friends and as sure as I'm writing this letter they will
> kill me after I testif[]y.

Aplee. Br. in No. 06-1108, Attach. 1 (Gov't Ex. 8, dated Nov. 17, 2003).[6]

In addition, Agent Moon informed the jury that Mr. Cluff's testimony

during the tax-fraud case implicated Mr. Wardell in the filing of fraudulent tax

returns. Mr. Cluff's testimony also implicated Mr. Pursley, but to a lesser degree.

Agent Moon further testified that neither Mr. Shields's nor Mr. Templeman's

names surfaced during her tax-fraud investigation. While they appeared on the

witness lists of Mr. Wardell and Mr. Pursley, they were not called to testify

---

[6]    Mr. Pursley did not object to the admission of this letter at trial. *See* R., Vol. XII, Tr. at 453. The government attached the letter to its brief in Mr. Wardell's related appeal which is pending in this court. *United States v. Wardell*, *appeal docketed*, No. 06-1108 (10th Cir. Mar. 21, 2006). In recounting the facts, we take judicial notice of it. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir.) (exercising discretion "to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"), *cert. denied*, 128 S. Ct. 424 (2007).

during the course of the trial.

## E.  Mr. Moltzan's Testimony

Mr. Moltzan was the federal marshal who escorted Mr. Cluff to the hospital after the assault.  Mr. Moltzan testified that his supervisor gave him the assignment to transport Mr. Cluff to the hospital at approximately 9:00 a.m., at which time Mr. Moltzan proceeded to the cellblock.  Mr. Moltzan further testified that, as they left the cellblock, Mr. Cluff "appeared nervous, kind of fidgety."  R, Vol. XII, Tr. at 522.  He "couldn't stop moving," and his eyes kept wandering. *Id*.

Mr. Cluff made two statements to Mr. Moltzan "no[t] more than a minute after we removed him from the cell, placed him in restraints, [and took] the elevator down to the basement level." *Id.*  According to Mr. Moltzan: "Mr. Cluff told me that . . . when Shields and Templeman were placed in his cell, he stated that Shields yelled out to Pursley and said, 'Hey, Cluff is down here with us,' and Pursley replied, 'Well, you know what to do.'" *Id*. at 526.

## F.  Outcome

The jury found each of the four defendants guilty on all the counts for which they were indicted.  We affirmed the district court's judgment against Mr. Shields and Mr. Templeman. *See United States v. Templeman*, 481 F.3d 1263, 1266 (10th Cir. 2007); *United States v. Shields*, 219 F. App'x 808, 809 (10th Cir. 2007).  Mr. Pursley received a sentence of 115 months' imprisonment on each of

the two counts for which he was convicted. The district court directed both counts to run concurrently with each other but consecutively to Mr. Pursley's sentence in the tax-fraud case; his conviction and sentence in that case were affirmed by this court in *Pursley*, 474 F.3d at 760-61. Mr. Pursley filed a timely notice of appeal. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's judgment.

## DISCUSSION

On appeal, Mr. Pursley challenges five of the district court's procedural and evidentiary rulings: (1) its refusal to sever his trial from that of his codefendants; (2) its admission of testimonial statements regarding Mr. Pursley's involvement in the conspiracy; (3) its admission of the excerpt of Mr. Pursley's opening jury argument in the tax-fraud case; (4) its refusal to grant his motions to continue the trial; and (5) its refusal to grant his requests for subpoenas.

### I. Severance

Prior to trial, Mr. Pursley and Mr. Wardell filed several motions to sever their trial from that of their alleged coconspirators. They claimed that severance was necessary, *inter alia*, to introduce exculpatory coconspirator testimony. The district court denied each motion. Although a final severance motion was filed during the trial, this motion also was denied. Thus, Mr. Pursley and his codefendants—Mr. Shields, Mr. Templeman, and Mr. Wardell—were tried together.

-12-

"We review the district court's denial of a motion to sever for an abuse of discretion." *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007). Rule 8(b) of the Federal Rules of Criminal Procedure permits an indictment to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). This rule expresses the "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir.) ("Joint trials of defendants who are charged together are preferred because they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." (internal quotation marks omitted)), *cert. denied*, 129 S. Ct. 772 (2008), *and cert. denied* 129 S. Ct. 2069 (2009). Pursuant to Rule 14(a), however, a court "may" sever the trials of more than one defendant if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).

A defendant seeking to vacate a conviction based upon the denial of a motion to sever faces a steep challenge. As an initial matter, we recognize a presumption in a conspiracy trial that coconspirators charged together preferably should be tried together. *United States v. Stiger*, 413 F.3d 1185, 1197 (10th Cir. 2005). Furthermore, because severance is a matter of discretion, a defendant bears the "heavy burden of showing real prejudice." *United States v. McConnell*,

-13-

749 F.2d 1441, 1444 (10th Cir. 1984); *see United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009) ("Rule 14(a)'s prejudice standard requires a showing of actual prejudice . . . ."). "Prejudice occurs when there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Stiger*, 413 F.3d at 1197 (internal quotation marks omitted); *see Zapata*, 546 F.3d at 1191.

To determine whether the district court abused its discretion in denying a severance motion in this context, we evaluate the following, nonexhaustive list of factors (the "*McConnell* factors"):

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; [and] 7) the timeliness of the motion.

*McConnell*, 749 F.2d at 1445. The *McConnell* factors support the district court's denial of each of Mr. Pursley's severance motions.

## A. Early Severance Motions

In Mr. Pursley's first severance motion, he claimed that essential exculpatory evidence—the testimony of Mr. Shields and Mr. Templeman—was available to him only if he was tried separately from them. He requested time to

submit evidentiary support for the motion. Approximately two weeks after filing this initial motion to sever, Mr. Pursley joined Mr. Wardell's motion to sever. This joint motion was later amended. The amended motion argued, *inter alia*, that "[i]n a joint trial, Messrs. Shields and Templeman would be forced to invoke their Fifth Amendment right against self-incrimination." R., Vol. I, Doc. 151, at 7 (Def. Wardell's Mot. to Sever (Am.), filed Oct. 31, 2005). At a severed trial, however, Mr. Shields and Mr. Templeman would testify that Mr. Pursley and Mr. Wardell did not identify Mr. Cluff as a "rat" and that Mr. Pursley and Mr. Wardell did not instruct them to assault Mr. Cluff.

We hold that the district court, in its order denying both motions, properly considered and applied each of the *McConnell* factors. We rest our conclusion upon the *absence*, at the time the motions were filed, of affidavits from Mr. Shields and Mr. Templeman validating Mr. Wardell's assertions—that is, expressing an intention to invoke their Fifth Amendment privilege in a joint trial, stating that they would testify in a severed trial, and identifying the exculpatory content of their testimony. In fact, the amended motion effectively conceded the uncertainty of such testimony by asking for permission to submit affidavits from Mr. Shields and Mr. Templeman "*if*, and when, they are received." *Id.* at 8 (emphasis added). Such speculation is insufficient to require severance. *See United States v. Dirden*, 38 F.3d 1131, 1141 n.13 (10th Cir. 1994) (affirming denial of motion to sever because nothing suggested codefendant "would have

testified, that his testimony, if given, would have been helpful . . . , or that his testimony would have been in any way exculpatory").

## B. Renewed Severance Motion

Mr. Pursley and Mr. Wardell filed a renewed motion to sever one working day before trial. The renewed motion provided declarations from Mr. Templeman and Mr. Shields stating that: (1) they would testify if Mr. Pursley's trial was severed from their trial but would not testify in a joint trial; (2) they did not "conspire" with Mr. Wardell or Mr. Pursley; and (3) they were never "instruct[ed]" by Mr. Wardell or Mr. Pursley "to physically assault Jess[i]e Cluff." R., Vol. II, Doc. 316, at 5, 6 (Pursley and Wardell's Renewed Mot. to Sever, filed Dec. 2, 2005).

We hold that the district court did not abuse its discretion in denying Mr. Pursley's renewed motion to sever, despite the presence of his coconspirators' declarations. Again, we believe that the district court properly applied the *McConnell* factors. The district court aptly determined that the proposed testimony lacked the requisite "substance" to generate prejudice. R., Vol. II, Doc. 322, at 2 (Order Den. Pursley's and Wardell's Renewed Mot. to Sever, dated Dec. 5, 2005). The testimony consisted, in its entirety, of two statements.[7] We address

---

[7] On appeal, Mr. Pursley argues that both Mr. Shields and Mr. Templeman were prepared to testify that they did have knowledge that was pertinent to Mr. Pursley's tax-fraud case and were prepared to be witnesses for

(continued...)

-16-

the exculpatory "substance" *vel non* of each statement.

The first statement simply memorialized a legal conclusion disavowing culpability—that neither coconspirator "conspire[d]" with Mr. Wardell or Mr. Pursley. R., Vol. II, Doc. 316, at 5, 6. Under our precedent, this conclusory assertion of innocence lacks the requisite exculpatory value to require severance. *See United States v. Rogers*, 925 F.2d 1285, 1287-88 (10th Cir. 1991) (holding that codefendant's purported testimony that defendant did not sell cocaine or handle weapons at codefendant's apartment "lacked substance" because it amounted "to little more than his assertion that [defendant] had no involvement in the charged crimes"); *McConnell*, 749 F.2d at 1445-46 (noting that testimony akin to bald assertion of defendant's innocence lacks exculpatory value).

The second statement offered little more. It provided a naked factual assertion—that neither Mr. Wardell nor Mr. Pursley verbally "instruct[ed]" Mr. Shields or Mr. Templeman "to physically assault" Mr. Cluff. R., Vol. II, Doc. No. 316, at 5, 6. This assertion is insufficient *on its face* to undercut the criminal liability of Mr. Pursley for either count of the indictment. It would *not* have

[7](...continued)
Mr. Pursley in that matter. However, the representation that Mr. Shields and Mr. Templeman had pertinent "knowledge" regarding the tax-fraud case was never made in any of Mr. Pursley's or Mr. Wardell's motions before the district court. Nor did Mr. Shields or Mr. Templeman ever declare that they would offer such testimony in a severed trial. Thus, Mr. Pursley's speculation, unlinked to any evidence in the record, cannot now serve as a basis to challenge the district court's severance rulings.

-17-

contradicted the array of circumstantial evidence proving a conspiracy, i.e., (1) the existence of an implied agreement, and (2) that Mr. Pursley knowingly took other overt acts to further this agreement.[8]  *See United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005) ("[T]he jury may infer conspiracy from the defendants' conduct and other circumstantial evidence indicating coordination and concert of action.").  And regardless of whether Mr. Pursley "instructed" the attack, Mr. Shields's undisputed assault of Mr. Cluff—the conspiracy's most dramatic overt act—made Mr. Pursley legally responsible both for the conspiracy and for the underlying § 1513(b)(1) offense.  *See Salinas v. United States,* 522 U.S. 52, 64 (1997) ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators."); *Pinkerton v. United States*, 328 U.S. 640, 647 (1946) (noting that one conspirator's commission of substantive offense in furtherance of the conspiracy makes all coconspirators responsible for both crimes).

Additionally, the district court acted within its discretion in concluding that the proposed statements would lack credibility at trial.  Both Mr. Shields and Mr. Templeman were impeachable through their extensive criminal history.

---

[8]      As discussed *supra*, this includes evidence that Mr. Pursley informed Mr. Shields about Mr. Cluff's role as a government witness in the tax-fraud prosecution, arranged Mr. Shields's and Mr. Templeman's transfer to the courthouse under the pretext of being witnesses in the tax-fraud case, conversed in whispers with Mr. Shields for nearly an hour on the day of the assault, and took steps to facilitate the assault from his cell.

Indeed, both fell into the highest criminal-history category under the sentencing guidelines. *See Hall*, 473 F.3d at 1302 (affirming denial in part because exculpatory value would be effectively nullified by declarant's long list of prior convictions); *McConnell*, 749 F.2d at 1446 (same). Mr. Pursley does not deny the impeachability of Mr. Shields and Mr. Templeman. Instead, Mr. Pursley proclaims that they "were no more impeachable than the only first-hand witnesses to the Government's case," Mr. Cluff and Mr. Hoskins, who also possessed extensive criminal histories. Aplt. Opening Br. at 23. Mr. Pursley's argument, however, is a red herring.

While perhaps not per se irrelevant to the severance inquiry, the impeachability of the government's "first-hand witnesses" is of little moment on these facts. Initially, we note that the jury seemingly credited their testimony in convicting Mr. Pursley of the charged crimes and Mr. Pursley does not challenge the sufficiency of the evidence of his guilt. More significantly, the impeachability of these witnesses does not diminish the credibility problems with Mr. Shields's and Mr. Templeman's projected testimony. And the existence of those credibility problems is an important factor in the severance inquiry. The district court certainly was entitled to find that their testimony lacked credibility.

Our seminal case, *McConnell*, makes clear that at least in most instances if a codefendant's proposed testimony lacks sufficient exculpatory content or would suffer from serious credibility problems at trial, severance is not required. There,

the defendant filed a motion to sever his trial on various counts of fraud from that of his codefendant. *McConnell*, 749 F.2d at 1444. The defendant's motion was accompanied by an affidavit from his codefendant. *Id.* This affidavit expressed the codefendant's willingness to testify upon severance, denied that the defendant made misrepresentations to the allegedly defrauded investors, and asserted that the defendant gave consideration for money paid out of the investors' funds. *Id.* at 1444-46. The district court denied the motion to sever. *Id.* at 1446. We affirmed, concluding that the affidavit lacked "substance." *Id.* We explained that it was "little more illuminating than a simple assertion that McConnell was innocent." *Id.* We further reasoned that it failed to rebut other governmental allegations of criminal liability and that the value of the proposed testimony was undermined by the declarant's prior fraud convictions. *Id.*

We have repeatedly ratified the lesson of *McConnell*. *See, e.g.*, *Hall*, 473 F.3d at 1302 (affirming denial of severance motion in part because the government would impeach declarant with an "extensive list of prior convictions"); *United States v. Powell*, 982 F.2d 1422, 1433 (10th Cir. 1992), (affirming denial of severance motion in part because codefendant's proposed testimony stating that "neither he nor [defendant] had agreed to commit any crime" would have been impeached by virtue of overwhelming evidence of defendant's involvement in marijuana distribution); *Rogers*, 925 F.2d at 1287-88 (affirming denial of severance motion in part because codefendant's proposed

testimony concerning defendant's noninvolvement "was contradicted by several witnesses" and amounted "to little more" than a conclusory assertion of defendant's innocence).

We perceive no meaningful distinction between Mr. Pursley's showing in support of severance and that found insufficient in *McConnell*. Similar to the affidavit at issue in *McConnell*, the declarations of Mr. Shields and Mr. Templeman lacked exculpatory content. Furthermore, as in *McConnell*, the district court was entitled to find that Mr. Shields's and Mr. Templeman's impeachability belied the credibility of their proposed testimony.

Furthermore, administrative factors support the district court's decision. Mr. Pursley's severance motion was filed *one* business day prior to trial, and relied upon declarations that should have been submitted with Mr. Pursley's original motion, nearly two months earlier. Granting severance also would have thwarted principles of judicial economy. The district court would have been required, at a minimum, to conduct two four-day trials, rather than just one. Our jurisprudence would confirm the propriety of the district court's decision to deny severance based at least in part on these circumstances. *See McConnell*, 749 F.2d at 1446 (noting that any prejudice to the defendant from not being able to present this testimony in a severed trial was "very small and greatly outweighed by the expense and administrative inconvenience of conducting two lengthy trials involving numerous witnesses rather than one consolidated trial"). Accordingly,

-21-

we discern no error in the district court's denial of Mr. Pursley's renewed severance motion.

## C. Severance Motions Filed During Trial

On the second day of trial, Mr. Pursley orally renewed his motion to sever. Mr. Pursley argued that the testimony of Mr. Shields and Mr. Templeman was even more vital in light of the government's assertion that they were not legitimate witnesses in the tax-fraud case. The district court denied this oral motion for the same reasons it had denied Mr. Pursley's earlier motions.

On the last day of witness testimony, Mr. Wardell and Mr. Pursley filed their final motion to sever. This motion provided new, somewhat more expansive declarations from Mr. Shields and Mr. Templeman. For the most part, each declaration identified specific inculpatory statements that Mr. Cluff and Mr. Hoskins attributed at trial to Mr. Wardell and Mr. Pursley. Mr. Shields and Mr. Templeman then agreed to testify, upon severance, that neither Mr. Wardell nor Mr. Pursley made any such statements on the day of the assault. Again, the district court denied this motion.

We perceive no abuse of discretion in either decision. As an initial matter, Mr. Pursley's last two motions were filed after the commencement of trial. A Rule 14 motion to sever must be raised before trial. Fed. R. Crim. P. 12(b)(3)(D); *United States v. Baker*, 432 F.3d 1189, 1239 (11th Cir. 2005) (holding that severance motion to permit exculpatory testimony of codefendant filed nine days

after start of trial was untimely). Thus, both were untimely. Even if they had been timely, the denial of these motions was justifiable for similar reasons to those given by the district court for denying the previous motions.

## II.  Admissibility of Mr. Cluff's Statements to Mr. Moltzan

The district court permitted Mr. Moltzan to testify, over the objection of Mr. Pursley and his codefendants, regarding the content of two out-of-court statements that Mr. Cluff made to him after the assault, when Mr. Cluff was being transported to the hospital. These statements described what Mr. Shields yelled to Mr. Pursley after Mr. Shields arrived in the cell with Mr. Cluff—"Hey, Cluff is down here with us" and Mr. Pursley's response—"Well, you know what to do." R., Vol. XII, Tr. at 526 (internal quotation marks omitted).

Mr. Pursley challenges the admission of these statements on two grounds. First, Mr. Pursley argues that the statements are inadmissible hearsay. Second, Mr. Pursley argues that even if the statements meet a hearsay exception, their admission violated the Confrontation Clause of the Sixth Amendment. After careful consideration, we reject Mr. Pursley's challenges. We hold that the challenged statements satisfy the excited-utterance exception to the general prohibition against hearsay evidence. We further hold that no Sixth Amendment violation occurred because Mr. Pursley had an opportunity to cross-examine Mr.

Cluff at trial.[9]

## A. Hearsay

Mr. Pursley preserved his hearsay objection at trial. We review the admission of evidence over a hearsay objection for abuse of discretion. *Dazey*, 403 F.3d at 1165-66. Due to the fact-specific nature of a hearsay inquiry, the district court's ruling necessitates "heightened deference." *United States v. Trujillo*, 136 F.3d 1388, 1395 (10th Cir. 1998). The district court ruled that both statements met the excited-utterance exception to the bar against hearsay evidence.[10] Hearsay evidence generally is "not admissible except as provided by" the Federal Rules of Evidence. Fed. R. Evid. 802. An exception is recognized for

---

[9] Because we determine that no constitutional violation has occurred, we do not address the government's argument that if a violation occurred it was harmless error.

[10] The government asks us to affirm the district court's evidentiary ruling on a ground not relied upon by the district court: that Mr. Cluff's conveyance to Mr. Moltzan of the conversation between Mr. Pursley and Mr. Shields was not hearsay. We rejected an identical argument raised in Mr. Shields's appeal. *See Shields*, 219 F. App'x at 810. This ruling is the law of the case for *this* appeal. *See United States v. LaHue*, 261 F.3d 993, 1010 (10th Cir. 2001) ("[W]hen a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue." (internal quotation marks omitted)); *United States v. Corrado*, 227 F.3d 528, 533 (6th Cir. 2000) (applying law-of-the-case doctrine to decide legal challenges previously considered and rejected during codefendant's appeal). Nor is there any exceptional reason to deviate from our prior ruling. Put simply, Mr. Cluff's statements were offered for the truth of the matter asserted—that Mr. Cluff overheard both Mr. Shields's statement to Mr. Pursley and Mr. Pursley's response. They, therefore, constitute hearsay within the meaning of Fed. R. Evid. 801(c).

a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). The excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event. *United States v. Ledford*, 443 F.3d 702, 710 (10th Cir. 2005).

Mr. Pursley forgoes any challenge to the first and third elements. Indeed, Mr. Cluff clearly experienced at least one startling event, the brutal assault, and the out-of-court statements obviously relate to that event. Hence, Mr. Pursley's argument for why the exception does not apply is that Mr. Cluff was no longer under the shock of the event when these statements allegedly were made. Mr. Pursley cites the following factors to demonstrate that an interjection of reflection, if not prevarication, occurred: the lapse of time between the assault and Mr. Cluff's contact with Mr. Moltzan; the occurrence of intervening events; and Mr. Cluff's motive to fabricate the statement.

Courts consider a range of factors in determining whether a declarant made a statement while under the stress of a particular event. Among the more relevant factors are: the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was

-25-

volunteered or in response to questioning. *United States v. Marrowbone*, 211 F.3d 452, 454-55 (8th Cir. 2000); *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995); 30B Michael H. Graham, *Federal Practice and Procedure* § 7043 (interim ed. 2006). We have recognized that "there is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance." *Ledford*, 443 F.3d at 711.

We first define the "startling event" set forth in Rule 803(2). The startling event clearly is the brutal assault. We next measure the lapse of time between the end of the event and the challenged statements. Although the parties have not identified this time period with exactitude, we can infer it from the record. Mr. Cluff was subject to a brutal beating during which his dental plate was crushed at around 8:00 a.m. As Mr. Pursley concedes, Mr. Cluff was removed from the site of the assault approximately thirty to forty minutes later. At 9:00 a.m., Mr. Moltzan proceeded to transport Mr. Cluff to the hospital, and, within a minute after leaving the cell block, Mr. Cluff made the challenged statements.

The overall passage of time between the assault and the statements was approximately one hour.[11] For more than half of this time, Mr. Cluff was in

_____

[11] At one point during the assault, Mr. Shields warned Mr. Cluff "not to try to get help again." R., Vol. XII, Tr. at 471. We note that, if the startling event is viewed as this arguable threat by Mr. Shields of future violence, there was no lapse in time. Under this logic, it was not until Mr. Cluff decided to relay the inculpatory statements to Mr. Moltzan that he experienced the immediate and

(continued...)

closed quarters with his assailants. They even warned him not to seek help from the guards, warnings that he followed because he was "afraid" and "couldn't handle another beating." *Id*. at 473-74. Thus, when Mr. Cluff finally made his statements to Mr. Moltzan, approximately twenty to thirty minutes after his removal from the presence of his assailants, he was well within the temporal range of trauma contemplated by Rule 803(2). *See Ledford*, 443 F.3d at 712 (admitting a statement as an excited utterance over a hearsay objection when there was a thirty-five minute period between assault and statement to police upon arriving on scene); *see also United States v. Cruz*, 156 F.3d 22, 30 (1st Cir. 1998) (admitting a statement as an excited utterance when there was a four-hour delay between spousal beating and statements made by victim at battered women's shelter); *United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998) (admitting a statement as an excited utterance when there was a three-hour delay between discovery that people were in burning building and declarant's statement admitting part in arson); *Webb v. Lane*, 922 F.2d 390, 395 (7th Cir. 1991) (admitting a statement as an excited utterance when there was a two-hour delay between shooting and victim's statement identifying perpetrator of shooting).

---

[11](...continued)
direct stress of the threat of violence. *See Ledford*, 443 F.3d at 710-11 (distinguishing between physical altercation and threat to kill declarant for calling police in determining whether statements made to police constitute excited utterances; concluding that, if latter event is used, no lapse of time occurred because anxiety was "triggered" when declarant spoke with police).

Other factors confirm that Mr. Cluff was still languishing under the event's agitation when he spoke with Mr. Moltzan. Mr. Moltzan testified that Mr. Cluff seemed "excited"; he "appeared nervous, kind of fidgety," and unable to "stop moving." R., Vol. XII, Tr. at 522. Mr. Cluff testified that he was in considerable pain, and, in fact, vomited on his way out of the cell. *See Webb*, 922 F.2d at 394-95 (acknowledging that "physical suffering" may well postpone the "opportunity to reflect"). Although Mr. Floyd, a federal marshal, testified that Mr. Cluff was alert and without disorientation or confusion when he requested medical attention, alertness is not tantamount to lack of excitement, or even lack of shock.

Moreover, no intervening event occurred between the time of Mr. Cluff's removal from his cell and his interaction with Mr. Moltzan that could have diluted the effect of the event's trauma. His request for medical treatment to address his pain certainly did not constitute such a shock-defeating event. Importantly, Mr. Cluff's statements on the way to the hospital were spontaneous—not conscious, reflective responses to suggestive questioning. *See United States v. Brun*, 416 F.3d 703, 707-08 (8th Cir. 2005) (noting that interaction between declarant and officer was "unstructured, and not the product of police interrogation"); *Paxton v. Ward*, 199 F.3d 1197, 1211 (10th Cir. 1999) (looking to see whether statement was "spontaneously volunteered" rather than "offered in response to questioning").

In the face of this formidable argument, Mr. Pursley stresses that Mr. Cluff

-28-

had a motive to fabricate.  Mr. Pursley cites Mr. Cluff's admission that he subsequently filed a million-dollar lawsuit against the United States Marshals Service.  Mr. Pursley argues that this lawsuit indicates that Mr. Cluff was not suffering from the stress of the assault when he spoke with Mr. Moltzan, but rather was incentivized by the prospect of a future payday.

We disagree.  We find it difficult to believe that during the very brief period after he was brutally assaulted, but before he spoke with Mr. Moltzan, that Mr. Cluff's attention was focused on setting the legal stage for a future payday.  At the very least, we find dubious the notion that any such thoughts of a payday would have been sufficiently strong and pervasive to dispel Mr. Cluff's stress occasioned by the assault.  Furthermore, we question whether the prospect of a lawsuit against the Marshals Service would have provided Mr. Cluff with a motive to lie about *who* perpetrated the assault.  For instance, if Mr. Cluff had been motivated by a future payday against the Marshals Service, it seemingly would have been sufficient to point a finger at the direct physical actors in the altercation—Mr. Shields and Mr. Templeman—rather than including Mr. Pursley and Mr. Wardell.  But Mr. Cluff did not do that.  In sum, we conclude that the Rule 803(2) factors heavily weigh in favor of admissibility.

## B.  Confrontation Clause

Mr. Pursley argues that even if Mr. Cluff's statements meet the excited-utterance exception, their admission violated the Confrontation Clause of the

Sixth Amendment. In response, the government argues that no violation occurred for any of three reasons: (1) the statements were not testimonial; (2) Mr. Pursley had an adequate opportunity to confront Mr. Cluff; and (3) even if the statements were admitted erroneously, their admission was harmless. Ultimately, we conclude that the government's second contention (i.e., regarding the opportunity to confront Mr. Cluff) is persuasive. Accordingly, we reject Mr. Pursley's Confrontation Clause challenge.

Mr. Pursley's Confrontation Clause objection was raised in a timely manner at trial. We review the district court's denial of his Sixth Amendment objection de novo. *United States v. Townley*, 472 F.3d 1267, 1271 (10th Cir. 2007).

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has interpreted this provision in the context of the English common law in 1791.

> [T]he common law in 1791 conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations. The numerous early state decisions applying the same test confirm that these principles were received as part of the common law in this country.

*Crawford v. Washington,* 541 U.S. 36, 54 (2004); *see Melendez-Diaz v. Massachusetts*, __U.S.__, 129 S. Ct. 2527, 2531 (2009) ("A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if

-30-

the witness is unavailable, the defendant had a prior opportunity for cross-examination.").

The Supreme Court has yet to issue an exhaustive definition of testimonial evidence—the kind of evidence implicating the Confrontation Clause. At the very least, testimonial evidence covers statements made in the course of police interrogations when the "circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). We have interpreted *Davis* as validating our preexisting definition of "testimonial evidence." *See Townley*, 472 F.3d at 1272. Hence, "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *United States v. Mendez*, 514 F.3d 1035, 1043 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 128 S. Ct. 2455 (2008); *see also Melendez-Diaz*, 129 S. Ct. at 2540 ("Whether or not they qualify as business or official records, the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.").

At trial, the district court adopted, as the basis for its ruling, the government's argument that Mr. Cluff's statements were nontestimonial. The

-31-

district court further stated that even if the statements were testimonial, as excited utterances, they fit into one of the hearsay exceptions present at the time the Sixth Amendment was adopted and, thus, their admission could not give rise to a Confrontation Clause violation.

Although we have not yet spoken on this issue, contrary to the district court, we believe that an excited utterance is not per se excluded from the scope of the Confrontation Clause. *See Davis*, 547 U.S. at 822 (noting that there is no per se exclusion for 911 calls; finding statement to police deemed "excited utterance" by state court to be testimonial). One of the lessons of *Crawford* and *Davis*, and their partial overruling of *Ohio v. Roberts*, 448 U.S. 56 (1980), is that even if a statement qualifies for an exception to the hearsay doctrine—based upon judicially fashioned reliability principles—the statement's admission may violate the Sixth Amendment's mandate for "confrontation" if it constitutes "testimonial" hearsay. *See Crawford*, 541 U.S. at 61-62 ("[The Confrontation Clause] commands, not that evidence be reliable, but that reliability be assessed in . . . the crucible of cross-examination."); *Melendez-Diaz*, 129 S. Ct. at 2533 (discussing *Ohio v. Roberts*'s "since-rejected theory that unconfronted testimony was admissible as long as it bore indicia of reliability").

Therefore, although they qualify as excited utterances, the admission of Mr. Cluff's statements could be found under certain circumstances to violate the Confrontation Clause, if they are testimonial. For our decisional purposes here,

we assume *arguendo* that Mr. Cluff's statements are testimonial. *Cf. Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."). That conclusion, however, does not end our inquiry. The parties' briefs on appeal draw our attention to a distinct ground upon which we conclude that the district court's Confrontation Clause ruling may be affirmed. Specifically, their briefing contests whether Mr. Pursley had an opportunity to cross-examine Mr. Cluff at trial. *Compare* Aplt. Opening Br. at 30 ("There was no opportunity for confrontation of Mr. Cluff regarding this statement . . . ."), *with* Aplee. Br. at 30 (noting in its brief heading "The Defendant Had Adequate Opportunity to Confront Cluff" (emphasis omitted)). We determine with little difficulty on this trial record that Mr. Pursley did indeed have a full and fair opportunity to cross-examine Mr. Cluff. Consequently, we conclude that Mr. Pursley's Confrontation Clause challenge must fail.

The parties did not advance this ground before the district court—i.e., focusing on Mr. Pursley's opportunity *vel non* to cross-examine Mr. Cluff—nor did the district court address it. However, we clearly have the discretion under certain specified circumstances to affirm a district court on a previously unexplored ground. *See Ledford*, 443 F.3d at 707 ("We may affirm the rulings of the lower court on any ground that finds support in the record, even where the

-33-

lower court reached its conclusions from a different or even erroneous course of reasoning." (internal quotation marks omitted)); *United States v. Sandia*, 188 F.3d 1215, 1217-18 (10th Cir. 1999) ("[W]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." (alteration in original) (internal quotation marks omitted)); *see also Laird v. Shell Oil Co.*, 770 F.2d 508, 511 (5th Cir. 1985) ("[W]hen the judgment of a district court is correct, it may be affirmed for reasons not given by the court and not advanced to it.").

We are particularly comfortable exercising that discretion here where the parties have identified the issue, where they have had an opportunity to make arguments to us concerning it, and where no further factual development is necessary to resolve it. *See Smith Eng'g Co. v. Rice*, 102 F.2d 492, 499 (9th Cir. 1938) ("Here the parties were given opportunity to present arguments on the point raised, and they have done so. We see no reason why we should make what we think would be an erroneous decision, because the applicable law was not insisted upon by one of the parties."); *cf. Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998) (noting that with *inter alia* "essentially legal issues to be resolved in this appeal, we believe that, as a prudential matter and in the interests of judicial economy, we should examine the entire record and should affirm on an alternate basis if the record reveals that the district court's decision was correct"); *Golden Nugget, Inc. v. Am. Stock Exch., Inc.*, 828 F.2d 586, 590

(9th Cir. 1987) ("We find no dispute as to material facts . . . . Since the issues have been briefed fully and argued to us, we probably are in a better position than the district court to decide them.").

The *sine qua non* of a Confrontation Clause violation is the absence of an opportunity to confront the witness. *See, e.g.*, *Melendez-Diaz*, 129 S. Ct. at 2531. Despite Mr. Pursley's protestations to the contrary, the record clearly reveals that he had such an opportunity with respect to Mr. Cluff. Therefore, the district court did not err in denying his Confrontation Clause challenge.

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). We recognize that Mr. Cluff did not testify as to the *content* of his post-assault statements to Mr. Moltzan. Nonetheless, Mr. Cluff testified that he did make such statements. He also testified as to the *pre-assault* conversation between Mr. Shields and Mr. Pursley as he remembered it. Mr. Pursley therefore had an opportunity to address these subjects during his cross-examination of Mr. Cluff.

Moreover, Mr. Cluff remained available as a witness even *after* Mr. Moltzan testified. At Mr. Pursley's request, the district court instructed the parties that Mr. Cluff "remain[ed] subject to recall for further testimony in the trial of this case." R., Vol. XII, Tr. at 518. Thus, Mr. Pursley retained the

-35-

opportunity to confront Mr. Cluff about whether he actually made the challenged statements and, if so, whether Mr. Moltzan accurately described their content. Mr. Pursley's failure to seize this opportunity at trial demolishes his Sixth Amendment claim.[12] *See, e.g.*, *Crawford*, 541 U.S. at 59 n.9 ("The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").

We certainly believe that Mr. Pursley had a greater opportunity to confront Mr. Cluff than defendants have had when testifying declarants have indicated that they cannot remember their out-of-court statements. Yet, courts have found no Confrontation Clause violation in that situation. *See Johnson v. State*, 878 A.2d 422, 427-29 (Del. 2005) (finding no Confrontation Clause violation under these facts); *State v. Gorman*, 854 A.2d 1164, 1177-78 (Me. 2004) (same); *State v. Price*, 110 P.3d 1171, 1174-75 (Wash. Ct. App. 2005) (same); 30A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 6371.2, at 64-65 (Supp. 2008) (approving trend).

In sum, Mr. Pursley had more than one opportunity to confront Mr. Cluff about the challenged statements at trial. Although Mr. Pursley chose not to

---

[12]    The district court released Mr. Cluff as a witness, and from the prospect of additional cross-examination, *only* after the defendants had presented their last witness. In fact, the district court released Mr. Cluff in response to Mr. Wardell's "unopposed" request to do so. R., Vol. XIII, Tr. at 684 (Jury Trial, dated Dec. 8, 2005).

exploit them, he certainly had opportunities to "confront[] . . . the witnesses against him." U.S. Const. amend. VI.

### III. Prior Opening Argument

Mr. Pursley argues that the district court erred by allowing the government to introduce two paragraphs of his opening argument in the tax-fraud case as an exhibit (the "exhibit" or the "jury-argument exhibit"). In this exhibit, Mr. Pursley's attorney described Mr. Cluff as the government's star witness, but she implied that the government's case was weak because Mr. Cluff would not be able to link Mr. Pursley to the crimes. The district court admitted this evidence into trial in the instant case as an admission of a party opponent by an agent, pursuant to Fed. R. Evid. 801(d)(2), and found it to be relevant apparently on the issue of motive, pursuant to Fed. R. Evid. 401.

Mr. Pursley argues that this exhibit did not meet the requirements of Rule 801(d)(2). He also argues that its introduction was unduly prejudicial, in that it forced him into the Hobson's choice between waiving "his right to [the] attorney-client privilege in the tax fraud case, which was still on appeal," and forgoing "his right to present a defense in the current case." Aplt. Opening Br. at 32-33.

To resolve these challenges, Mr. Pursley asks us to adopt the prophylactic procedures announced in *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984). Due to various practical and constitutional concerns, the Second Circuit in *McKeon* proposed a rigorous series of steps that district courts must follow to

determine when prior jury argument may be admitted in a subsequent criminal

trial as an admission of a party opponent under Rule 801(d)(2).[13]  *McKeon*, 738

F.2d at 31-33.  "Had the Court done the *McKeon* analysis," argues Mr. Pursley,

"it would have been clear that the prior opening argument should not have been

admitted."  Aplt. Opening Br. at 34.

    We express some doubt as to the legal value of *McKeon*'s procedural

safeguards.  Indeed, we note that the Federal Rules of Evidence seem to provide

ample protection to guard against the prejudice that may accompany the

admission of a prior jury argument.  Fed. R. Evid. 401 (defining "relevant

evidence"); Fed. R. Evid. 403 (noting that relevant evidence may be "excluded if

its probative value is substantially outweighed by the danger of unfair

---

[13]    We describe the *McKeon* roller mill in full.  First, the "district court must be satisfied that the prior argument involves an assertion of fact inconsistent with similar assertions in a subsequent trial."  *McKeon*, 738 F.2d at 33.  This excludes "[s]peculations of counsel, advocacy as to the credibility of witnesses, arguments as to weaknesses in the prosecution's case or invitations to a jury to draw certain inferences."  *Id.*  Second, the inconsistency should be "clear and of a quality which obviates any need for the trier of fact to explore other events at the prior trial."  *Id.*  Third, the statements of counsel must be "the equivalent of testimonial statements by the defendant"—the defendant must directly or inferentially participate in the factual assertion.  *Id.*  Finally, the district court should determine by a preponderance of the evidence, outside of the presence of the jury, that the inference the prosecution "seeks to draw from the inconsistency is a fair one and that an innocent explanation for the inconsistency does not exist," while also considering rights that may be diluted if the statement is admitted.  *Id.*

prejudice").[14] We also express doubt as to the factual applicability of *McKeon* to the instant appeal. In *McKeon*, the government introduced the defendant's opening statement from his second prosecution for conspiracy to export firearms, which ended in a mistrial, in the government's third prosecution of the defendant for the same crime. *McKeon*, 738 F.2d at 28-29. The government asserted that a factual inconsistency between the defendant's opening argument in the second trial and his opening argument in the third trial—an inconsistency concerning the source of various documents suggesting ownership of an illegal firearms shipment—was relevant to prove the defendant's "consciousness of guilt." *Id.* at 29.

By contrast, in the instant case, Mr. Pursley was not prosecuted a second time for the same charge. The government introduced Mr. Pursley's prior jury argument in a prosecution for charges *unrelated* to his tax-fraud conviction. More importantly, the government never used the jury-argument exhibit to demonstrate consciousness of guilt or to prove an element of the instant crimes. In fact, the government never introduced it for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) (defining hearsay as any out-of-court statement "offered

---

[14] Even the Second Circuit has circumscribed *McKeon*'s reach. *See United States v. Amato*, 356 F.3d 216, 219-20 (2d Cir. 2004); *United States v. Arrington*, 867 F.2d 122, 127-28 (2d Cir. 1989) (limiting *McKeon* to defense attorney's prior jury argument, as opposed to defense attorney's prior out-of-court statements).

in evidence to prove the truth of the matter asserted"). Instead, as Mr. Pursley concedes, his opening statement in the tax-fraud case was used to show "a motive for the assault." Aplt. Opening Br. at 34. These factual distinctions, at least in this case, weaken any need for *McKeon*'s prophylactic standards and procedures.

Ultimately, however, we need not decide whether to adopt the Second Circuit's approach in *McKeon*. We also need not decide whether the jury-argument exhibit was inadmissible under a traditional Rule 801(d)(2) or Rule 401(b) analysis. Instead, assuming *arguendo* that there was some error in admitting this exhibit, the government has established that this nonconstitutional error was harmless by a preponderance of the evidence. *Cf. Stiger*, 413 F.3d at 1190-91 (finding error was harmless by a preponderance of the evidence when district court used "defective" verdict form to convict defendant).

Several reasons leave us with no doubt that the admission of the prior jury argument did not have a "substantial influence" on the outcome of Mr. Pursley's prosecution. *See Kotteakos v. United States*, 328 U.S. 750, 765 (1946). The challenged portion of the exhibit—the characterization of Mr. Cluff as the government's "star witness"—was cumulative of the other evidence in the record. The jury received undisputed evidence that Mr. Cluff testified against Mr. Pursley during the tax-fraud trial, that Mr. Cluff's testimony implicated Mr. Pursley to some extent, and that Mr. Pursley cryptically threatened Mr. Cluff after his testimony.

-40-

Moreover, we are unable to see how the admission of the jury-argument exhibit, as a whole, prejudiced Mr. Pursley. Although Mr. Pursley's attorney described Mr. Cluff as the government's "star witness," she did so only to emphasize the weakness in the government's tax-fraud case: "Even the government's star witness, Jessie Cluff, *even he won't* be able to link my client to these crimes." Gov't Ex. 5, *supra*, at 4 (emphasis added). She then argued that Mr. Cluff "is not going to have anything to say about Mr. Pursley's involvement in these alleged crimes." *Id.* at 4-5. Thus, to the extent this exhibit provided a window into Mr. Pursley's psychology around the time of the assault, it primarily exposed his belief that Mr. Cluff's testimony, on its face, was largely innocuous, despite the government's representations to the contrary. It, therefore, offered little probative evidence of Mr. Pursley's motive to assault Mr. Cluff.

## IV. Motions to Continue

Mr. Pursley argues that the district court abused its discretion by refusing to grant his pretrial motions for a continuance. Mr. Pursley contends that a continuance should have been granted because "he could not be ready for trial due to delays in obtaining investigators and experts caused by his in custody and pro se status." Aplt. Opening Br. at 39.

We review the denial of a continuance motion for an abuse of discretion. *United States v. Dowlin*, 408 F.3d 647, 663 (10th Cir. 2005). Error only exists if the district court's decision was "arbitrary or unreasonable *and* materially

prejudiced the defendant." *Id*. (emphasis added) (internal quotation marks

omitted). In making this determination, we evaluate the following factors (the

"*Rivera* factors"):

> [1] the diligence of the party requesting the continuance; [2]
> the likelihood that the continuance, if granted, would
> accomplish the purpose underlying the party's expressed need
> for the continuance; [3] the inconvenience to the opposing
> party, its witnesses, and the court resulting from the
> continuance; [4] the need asserted for the continuance and the
> harm that appellant might suffer as a result of the district
> court's denial of the continuance.

*United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (en banc)

(alterations in original) (quoting *United States v. West*, 828 F.2d 1468, 1470 (10th

Cir. 1987)). The final factor is the most important. *Id.* at 1476.

The district court did not abuse its discretion by denying Mr. Pursley's

motions to continue the trial. The district court carefully addressed and properly

applied each of the *Rivera* factors. On appeal, Mr. Pursley mentions, but does not

justify, his need for the continuance under the *Rivera* factors. He does not cite a

single case to support his position. Consequently, we are free to end our inquiry

by applying the principle that "[a]rguments inadequately briefed in the opening

brief are waived." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir.

1998). However, even if we were to consider Mr. Pursley's continuance

contention on the merits, it would fail.

We address each *Rivera* factor in sequence. First, the only evidence in the

record of Mr. Pursley's diligence in pursuing investigative and expert witnesses is a single statement, made by Mr. Wardell, that Mr. Pursley "contacted numerous investigative agencies and experts before locating [a named expert] and other experts." R., Vol. II, Doc. 264, at 1 (Supplement to Mot. to Continue Trial Date, filed Nov. 28, 2005). This statement, however, was never properly before the district court. It was made in a so-called supplement that the district court treated as an unauthorized reply to the government's response and struck from the record. In addition, this statement alone is insufficient to suggest diligence. Mr. Pursley never identified when he contacted his investigators. Morever, Mr. Pursley never explained why he needed expert assistance in a relatively uncomplicated witness-retaliation prosecution. *See Dowlin*, 408 F.3d at 663 (noting that a defendant seeking continuance to obtain witness testimony must show "who the witness was, what his testimony would be, and that the testimony would be competent and relevant").

Second, Mr. Pursley fails to identify any facts in the record to suggest that he would have benefited from a continuance. In particular, we note that none of the continuance motions before the trial court specifically identified whether Mr. Pursley's investigator needed more time to interview witnesses or to review discovery. On appeal, Mr. Pursley claims that he "provided the Court with affidavits from *his* expert and *his* investigator," explaining the problems that necessitated a continuance. Aplt. Opening Br. at 39 (emphasis added). Mr.

-43-

Pursley, however, does not identify where in the record these alleged affidavits are located, and our independent review of the record has failed to uncover them. Without such affidavits, we defer to the district court's conclusion that any benefit was speculative.

Third, the district court repeatedly found that the court, the government, and the scheduled witnesses would be prejudiced by the requested delay of at least twenty-four weeks. The district court stressed the type of havoc such a continuance would wreak on its already congested docket. We cannot say that these findings were clearly erroneous.

Fourth, Mr. Pursley's showing of prejudice from the refusal to grant a continuance is woefully lacking. *See Rivera*, 900 F.2d at 1476 ("Reversal for failure to grant a continuance is appropriate only if it materially prejudiced defendant." (internal quotation marks omitted)). On appeal, Mr. Pursley makes no mention of how the lack of time *actually* inhibited his defense at trial. *See United States v. Simpson*, 152 F.3d 1241, 1251-52 (10th Cir. 1998) (affirming denial of continuance when defendant on appeal failed to explain why his expert's inability to testify on subject "would have materially prejudiced" his case). Specifically, Mr. Pursley fails to identify what "substantial favorable evidence" he would have uncovered and utilized at trial through additional investigation and preparation. *See Rivera*, 900 F.2d at 1476.

Nothing in the record suggests that Mr. Pursley's agents needed more time

to complete their investigation, and, if so, why.  We also cannot imagine how additional investigative time could have yielded fruitful evidence to dent the government's overwhelming proof of Mr. Pursley's guilt.  We are mindful that Mr. Pursley's incarceration generated communicational difficulties with his investigators.  These delays, while certainly impediments, are not grounds to reverse the district court's refusal to delay the trial date.  Mr. Pursley was aware of these conditions when he persisted in representing himself, more than three months prior to trial.  Mr. Pursley makes no argument, let alone a sufficient showing, as to how these communicational delays negatively influenced his readiness for trial.

## V.  Subpoenas

Mr. Pursley issued subpoenas ad testificandum and subpoenas duces tecum to approximately eleven individuals during the week prior to trial.  The district court asserted that it was granting the government's motion to quash these subpoenas, *inter alia*, because Mr. Pursley failed to comply with Rule 17(b) of the Federal Rules of Criminal Procedure.  Mr. Pursley argues on appeal that the district court erroneously refused to issue subpoenas, pursuant to Rule 17(b), for the testimony of four witnesses—Mr. Youngblood, Mr. Floyd, Ms. Buchanan, and Mr. Kolle—and the production of documents in the possession of Ms. Buchanan

and Mr. Kolle.[15]  For the following reasons, we reject Mr. Pursley's arguments.

The refusal to issue a subpoena pursuant to Rule 17(b) is reviewed for an abuse of discretion.  *United States v. Greschner*, 802 F.2d 373, 378 (10th Cir. 1986).  Rule 17(d) states that a subpoena, whether ad testificandum or duces tecum, must be served and accompanied by "one day's witness-attendance fee and the legal mileage allowance."  Fed. R. Crim. P. 17(d).  An exception to the compensation requirement is provided for indigent defendants:

> Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense.  If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.

Fed. R. Crim. P. 17(b).  Thus, Rule 17(b) requires a court to issue a subpoena when an indigent defendant: (1) files an ex parte application with the court; (2)

---

[15]  On appeal, Mr. Pursley also complains about the district court's failure to issue a subpoena for the production of documents from Mr. Floyd—specifically, "prisoner call up sheets to show that Mr. Shields and Mr. Templeman had not been brought to court together as implied by the Government."  Aplt. Opening Br. at 41.  However, Mr. Pursley expressly acknowledged before the court that he had not issued a subpoena duces tecum to Mr. Floyd for production of records and had only sought testimony from him.  Specifically, Mr. Pursley answered, "No, your Honor," when the court asked him whether he had "issued a subpoena duces tecum to [Mr. Floyd] commanding production of the call-up sheets."  R., Vol. XII, Tr. at 632 (italics omitted).  Consequently, regarding Mr. Floyd, we deem Mr. Pursley's document-related subpoena challenge to be waived.  *See, e.g.*, *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) ("Waiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it.").

shows an inability to pay the witness's fees; and (3) demonstrates the necessity for the witness's presence for an adequate defense. *Id.*; *see Greschner*, 802 F.2d at 378; *see also Speers v. United States*, 387 F.2d 698, 701-02 (10th Cir. 1967) ("A motion to have a defense witness produced at government expense is addressed to the sound judicial discretion of the court and is not an absolute right." (internal quotation marks omitted)).

By virtue of the "necessity" requirement, a defendant's burden under Rule 17(b) is not light. "Mere allegations of materiality and necessity are not sufficient to establish that a witness is necessary to an adequate defense." *United States v. LeAmous*, 754 F.2d 795, 798 (8th Cir. 1985). To show "necessity," a defendant must establish that the witness's testimony is "relevant, material, and useful." *United States v. Hernandez-Urista*, 9 F.3d 82, 84 (10th Cir. 1993) (internal quotation marks omitted). He or she must demonstrate "particularized need." *Id.*

We have explained, in no uncertain terms, what does *not* constitute particularized need. For example, an adequate ground for the denial of a request for a subpoena under the necessity requirement of Rule 17(b) exists when the defendant fails to "set forth the expected testimony of a witness," or when the testimony of the subpoenaed witness would be "cumulative" of the testimony of other witnesses. *Id.* Practical factors also bear on this analysis, such as the timeliness of the subpoena request and the possible delay of trial. *United States*

*v. Bloomgren*, 814 F.2d 580, 585 (10th Cir. 1987) ("The timeliness of the request and the possible delay of trial are factors to be considered by a trial court.").

Applying these principles, we hold that the district court acted within its discretion in denying Mr. Pursley's Rule 17(b) requests.  At the outset, we note that Mr. Pursley's ex parte motion did not provide any explanation as to why individual witnesses were necessary to his defense.  Instead, his motion offered only a conclusory statement of collective necessity: "The individuals/evidence are material and necessary for an adequate defense."  R., Vol. III, Doc. 328, at 1 (Ex Parte Mot. for Subpoena Duces Tecum In Forma Pauperis and Certificate of Pro Se Counsel, filed Dec. 5, 2005).  In fact, Mr. Pursley's motion never even identified the witnesses that he wanted to subpoena.  Rather, as the district court noted, "he inexplicably and inexcusably . . . appears to have served the witnesses directly."  R., Vol. II, Doc. 357, at 2 (Order Granting Government's Second Mot. to Quash Subpoenas, dated Dec. 7, 2005).  The district court was entitled to deny his subpoena requests on this basis alone.[16]  *See United States v. Youngman,* 481 F.3d 1015, 1017 (8th Cir. 2007) ("A 'conclusory statement' that a witness is

---

[16]    The district court did permit Mr. Pursley to join Mr. Wardell's similar motion, styled an ex parte motion of subpoena duces tecum, which did identify certain witnesses.  *See* R., Vol. III, Doc. 359, at 1 n.2 (Order Den. Without Prejudice Mr. Wardell's *Ex Parte* Mot. for Subpoena Duces Tecum In Forma Pauperis and Certificate of Pro Se Counsel, dated Dec. 7, 2005).  The district court denied that motion for failure to establish necessity under the same rationale detailed here.  *Id.* at 2.

needed for a defense does not satisfy the burden under Rule 17(b).")

We further agree with the district court that Mr. Pursley also did not make the requisite showing of "necessity" orally, when the district court offered him the opportunity to supplement his defective ex parte application.[17] We address

_____

[17] As noted above, based upon Mr. Pursley's defective ex parte written submission, the district court would have been acting well within its discretion in denying his subpoena requests. Before the commencement of the defense presentations, however, the court endeavored to aid Mr. Pursley and Mr. Wardell by giving them an opportunity to make an oral showing of necessity for the witnesses sought to be subpoenaed. The court patiently elicited as to each witness Mr. Pursley sought to subpoena his necessity rationale. While we commend the district court for its thoroughness, we must express very serious concerns regarding the approach the court took in providing Mr. Pursley with another opportunity to demonstrate necessity. Specifically, the court conducted its necessity inquiry in front of government counsel. *See Greschner*, 802 F.2d at 379 (noting that Rule 17(b) "require[s] the trial court to consider the motions *ex parte*" and that the trial court "violated" the rule "by allowing two Government attorneys to attend the [subpoena] hearing"); *see also United States v. Gaddis*, 891 F.2d 152, 154 (7th Cir. 1989) (per curiam) (discussing the history leading up to Rule 17(b)'s ex parte provision and noting that "since 1966 indigent defendants, in requesting the issuance of a subpoena and the payment of witness expenses, need reveal their defense theory only to an impartial court and not to their government adversary"); *United States v. Espinoza*, 641 F.2d 153, 158 (4th Cir. 1981) (noting the 1966 amendment to Rule 17(b) adopted a "constitutionally unobjectionable procedure of permitting such disclosure to be made to the court ex parte, thus assuring that the government not become privy thereto").

However, even assuming that the district court erred in eliciting Mr. Pursley's necessity rationale in the government's presence, we do not think its error would require reversal on these facts. First, Mr. Pursley has not expressly advanced this assumed error on appeal as a grounds for reversal. He has cited to no authority with respect to it and made nothing that would pass for a legal argument with regard to it. Mr. Pursley instead has contended that the district court committed error when it obliged him to demonstrate necessity itself, after it had already waived the subpoena fees for his witnesses. He (erroneously) has

(continued...)

-49-

[17](...continued)
argued that the waiver of the subpoena fees "essentially waiv[ed]" the necessity requirement of Rule 17(b). Aplt. Opening Br. at 41. Mr. Pursley has noted only in passing that the district court's requirement that he make a necessity showing "especially" was "inappropriate" because the court supposedly obliged him to do so "in open court in front of the U.S. Attorney." *Id.* Under our precedent, this skeletal reference is insufficient to raise the ex parte/disclosure concern as a discrete appellate issue. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) (noting that "cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine"). Accordingly, we appropriately deem it to be waived. *See, e.g.*, *Adler*, 144 F.3d at 679. Second, even if we were to take the extraordinary step of addressing the issue "[o]n our own motion," *Greschner*, 802 F.2d at 380, we again would conclude that Mr. Pursley waived the assumed error when we factor into the equation his conduct during the hearing. Although "consider[ing] the possibility of waiver with caution" because the defendants represented themselves, in *Greschner* we nevertheless concluded the defendants waived the ex parte requirement of Rule 17(b) (as well at 18 U.S.C. § 3006A(e)), when they sent a copy of their motion identifying their desired expert witness to the government, did not object to the government's presence at the hearing on the motion, and did not raise a concern about a violation of the ex parte requirement in their briefing on appeal. *Id.* at 380. *Greschner* strongly supports our conclusion that Mr. Pursley waived the ex parte issue. Starting with the last point, as noted, although Mr. Pursley alluded to the ex parte issue in his appellate brief, that skeletal reference does not present a cognizable issue for appellate review. And, similar to the defendants' intentional, affirmative act in *Greschner* of sending a copy of their motion to the government, Mr. Pursley *volunteered* in open court with the government present to provide his necessity rationale for calling the witnesses. The dialogue with the court is telling:

> THE COURT:      . . . .
>
>             Gentlemen, there has to be at a minimum at least a proffer of why these witnesses are necessary to your defense. The mere incantation, the talismanic incantation in a conclusory fashion that they are necessary won't cut it.
>
> MR. PURSLEY:    *I can provide that information now* if that's
>
> (continued...)

-50-

their showing *vel non* as to each witness that Mr. Pursley claims the district court should have subpoenaed pursuant to Rule 17(b).

Clearly, a subpoena ad testificandum was not required for Mr. Kolle, who testified at trial. Mr. Pursley had the opportunity to cross-examine him exhaustively. *Cf. United States v. Kaufman*, 393 F.2d 172, 177 (7th Cir. 1968)

---

[17](...continued)
> what you are asking. What they are going to testify about.
>
> THE COURT:     Please. And I want to take you through the list so there is some degree of organization and continuity here.
>
> MR. PURSLEY:    *That's no problem.*

R., Vol. II, Tr. at 621 (emphasis added). Thus, Mr. Pursley offered to make his showing of necessity immediately in open court when the government was present and expressed no concern about responding to the court's structured inquiry at that time that was designed to explore the necessity issue. The district court's assumed error was therefore invited by Mr. Pursely. Consequently, these facts reflect one of the paradigmatic instances of waiver under our case law. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008) ("We typically find waiver in cases *where a party has invited the error that it now seeks to challenge*, or where a party attempts to reassert an argument that it previously raised and abandoned below."(emphasis added)), *cert. denied*, 129 S. Ct. 2034 (2009). Lastly, like the defendants in *Greschner*, Mr. Pursley never lodged an objection to the government's presence during the district court's necessity inquiry. To be sure, Mr. Wardell did. R., Vol. XII, Tr. at 635. However, he failed to do so until virtually all of Mr. Pursley's dialogue with the court about the purported necessity for the witnesses had taken place. At least as to Mr. Pursley, this arguably untimely objection should not materially alter the waiver analysis. Thus, ultimately we conclude, like we did in *Greschner*, that the district court's assumed error concerning Rule 17(b)'s ex parte requirement "has been waived" by Mr. Pursley. *Greschner*, 802 F.2d at 380.

(declining to find error under Rule 17(b) where district court refused defendant's request to compel for recross-examination "two government witnesses, after the Government had closed its case," and noting that defendant "had and exercised the right to cross-examine the witnesses when they testified as government witnesses"); *United States v. Ozsusamlar*, No. S1 05 Cr. 1077(PKL), 2007 WL 2200694, at *11 (S.D.N.Y. July 30, 2007) (denying Rule 17(b) subpoena for witness to testify at hearing on motion for judgment of acquittal or new trial, noting that the witness was cross-examined at trial and there was "no reason to believe that additional testimony from [the witness] would be anything other than cumulative testimony").  We also fail to see how the documents requested of Mr. Kolle—records showing where Mr. Cluff was imprisoned in the mid-1990s—would have been relevant, let alone necessary, to Mr. Pursley's defense. Like Mr. Kolle, Mr. Floyd testified at trial and was subject to cross-examination. With respect to Ms. Buchanan, Mr. Pursley informed the district court that her presence was only necessary to authenticate a letter that previously had been produced.  Mr. Pursley, however, failed to present this document or to show that the government was challenging its authenticity.

On appeal, Mr. Pursley vigorously stresses the necessity of Mr. Youngblood's testimony for his defense.  Mr. Pursley argues that Mr. Youngblood's testimony was relevant to whether Mr. Cluff's statements to Mr. Moltzan constituted an excited utterance, since Mr. Youngblood, a federal

marshal, had contact with Mr. Cluff immediately after the fight, but prior to Mr. Cluff's contact with Mr. Moltzan.  Because Mr. Pursley never articulated this rationale before the district court,[18] we review for plain error.  *See Black v. M & W Gear Co.*, 269 F.3d 1220, 1235 (10th Cir. 2001).

Mr. Pursley's challenge fails under this rigorous standard.  He has completely failed to demonstrate that any possible Rule 17(b) error concerning Mr. Youngblood affected his substantial rights—the third prong of the plain error test.  *See, e.g.*, *United States v. Zubia-Torres*, 550 F.3d 1202, 1208 (10th Cir. 2008) ("When reviewing an issue for plain error, we will reverse the judgment below only if there is (1) error, (2) that is plain, which (3) affects substantial rights."), *cert. denied*, 129 S. Ct. 2034 (2009).  Even in his presentation of this excited-utterance rationale on appeal, Mr. Pursley has been unable to specify the content of Mr. Youngblood's expected testimony on the issue.  *See Hernandez-Urista*, 9 F.3d at 84 (affirming denial because defendant "failed to specify the content of the expected testimony"); *Bloomgren*, 814 F.2d at 585 (affirming

---

[18]    At trial, Mr. Pursley took a different approach.  Mr. Pursley contended that he needed Mr. Youngblood's testimony for two reasons.  First, Mr. Youngblood's testimony could contradict Mr. Cluff's testimony regarding which cell Mr. Wardell occupied.  Second, Mr. Youngblood stated that he observed marks on Mr. Templeman's and Mr. Shields's hands when he was shackling them after the assault, but, according to the videotape, Mr. Youngblood never actually shackled them.  Because Mr. Pursley failed to raise these arguments on appeal, we deem them to be waived.  *See, e.g.*, *Wyoming v. Livingston*, 443 F.3d 1211, 1216-17 (10th Cir. 2006).

denial in part because defendant failed to "reveal with specificity the substance of each of the individual witnesses' testimony").

More importantly, Mr. Pursley cross-examined Mr. Cluff, Mr. Floyd, and Mr. Moltzan and, therefore, had the opportunity to ask about Mr. Cluff's physical and mental state after the assault. Thus, the testimony of Mr. Youngblood, who moved Mr. Cluff to a new cell a few minutes prior to Mr. Cluff's conversation with Mr. Floyd, would have been cumulative of this prior testimony. *See Hernandez-Urista*, 9 F.3d at 84 (determining that the denial of a request for a subpoena is supported when witness testimony is merely cumulative); *United States v. Mayes*, 917 F.2d 457, 462 (10th Cir. 1990) (same).

As a final point, we note that the timing of Mr. Pursley's Rule 17(b) request supports the propriety of its denial. Although Mr. Pursley filed his motion on the first day of trial, he never attempted to make a nonconclusory showing of necessity until the government rested. Mr. Pursley provided no justification for failing to act sooner. Granting Mr. Pursley even partial relief at that point had the potential to delay the completion of the trial. *See Bloomgren*, 814 F.2d at 585 (holding that lack of timeliness of a Rule 17(b) application supported the district court's decision to deny twenty-three of twenty-six requested subpoenas); *United States v. Stoker*, 522 F.2d 576, 579 (10th Cir. 1975) (holding that a Rule 17(b) application filed on last day of government's case lacked timeliness and supported district court's limitation on subpoena requests);

*United States v. Nivica*, 887 F.2d 1110, 1118 (1st Cir. 1989) (finding a Rule 17(b) application untimely when defendant "waited until shortly before the government rested to make his request").

## CONCLUSION

For the foregoing reasons, we reject each of Mr. Pursley's challenges on appeal. Accordingly, we affirm the district court's judgment.