FILED
United States Court of Appeals
Tenth Circuit

July 7, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

v.

ELIZABETH D. KUPFER,

      Defendant – Appellant.

No. 13-2138

---

**Appeal from the United States District Court
for the District of New Mexico
D.C. No. 1:10-CR-03383-WJ-2)**

---

Todd A. Coberly, Santa Fe, New Mexico, for Defendant-Appellant.

Tara C. Neda, Assistant United States Attorney (Damon P. Martinez, United States Attorney, and Laura Fashing, Assistant United States Attorney, on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

---

Ms. Elizabeth Kupfer and her husband jointly filed federal income taxes for 2004-2006, but failed to report over $790,000 in gross income. The government charged Ms. Kupfer with three counts of tax evasion, one for each tax year. *See* 26 U.S.C. § 7201. She admitted that she had failed to report a substantial amount of gross income, but denied that her under-reporting was willful. The jury disagreed and found Ms. Kupfer guilty on each of the three counts. Convicted and sentenced to three years in prison, Ms. Kupfer appeals based on three issues.

## I. The Three Issues on Appeal and our Conclusions

The first issue involves the jury instructions. The district court instructed the jury that it could find guilt only if the under-reporting had been willful. Ms. Kupfer contends that the court should have gone further, telling the jury that the under-reporting would not have been considered "willful" if it had been merely negligent, inadvertent, accidental, mistaken, or reckless. We conclude that the district court acted within its discretion in declining to give the additional instruction.

The second issue involves a juror's reference to unrelated charges. After the trial ended, Ms. Kupfer submitted an affidavit stating that a juror had commented on other charges during jury deliberations. The district court declined to conduct a hearing or to grant a mistrial. We conclude that these rulings fell within the district court's discretion because the court could reasonably conclude that a hearing was unnecessary and that the improper remarks were harmless.

2

The third issue involves Ms. Kupfer's sentence. In deciding on the sentence, the district court increased the offense level for obstruction of justice based on Ms. Kupfer's failure to reveal her under-reporting of income. The government concedes error, and we agree that the district court should not have increased the offense level. A defendant does not commit obstruction of justice, for purposes of an increase in the offense level, by failing to disclose her crime.

## II.     The Jury Instructions

The district court instructed the jury on willfulness, stating that it

- was required for a finding of guilt and

- referred to "the voluntary intent to violate a known legal duty."

R., vol. IV, at 1224. Conceding that this instruction was correct as far as it went, Ms. Kupfer argues that the court should have also included her proposed language on mental states, short of willfulness, that would have required acquittal: negligence, inadvertence, accident, mistake, and recklessness. *Id.* at 1194. According to Ms. Kupfer, this language was necessary to adequately present the theory of her defense.

We reject this argument because the district court (1) correctly instructed the jury that it could find guilt only if Ms. Kupfer had willfully failed to report the income and (2) correctly defined the term "willfully." *Id.* at 1224. With this instruction, Ms. Kupfer was able to obtain consideration of her defense theory.

3

Our scrutiny is limited, for we consider the refusal to give a requested jury instruction under the abuse-of-discretion standard. *United States v. Moran*, 503 F.3d 1135, 1146 (10th Cir. 2007). In assessing the district court's exercise of discretion, we recognize Ms. Kupfer's right to jury instructions on her defense theory as long as it was supported by the evidence and the law. *United States v. Visinaiz*, 428 F.3d 1300, 1308 (10th Cir. 2005). For the sake of argument, we can assume evidentiary and legal support for Ms. Kupfer's defense theory. With this assumption, we must determine whether "without [Ms. Kupfer's proposed language], the district court's instructions were erroneous or inadequate." *United States v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1998). We conclude that the instructions were correct and adequate for consideration of Ms. Kupfer's defense.

In instructing the jury, the court correctly identified the elements of the charge and defined the term "willfully." R., vol. IV, at 1224. Indeed, Ms. Kupfer does not question the correctness of the definition. Instead, she contends the instructions were inadequate for the jury to consider her defense theory. We disagree.

She points out that we have sometimes upheld jury instructions because they included language stating what would have fallen short of willfulness. Defendant's Opening Br. at 17-18 (citing *United States v. Bowling*, 619 F.3d 1175, 1184 (10th Cir. 2010); *United States v. Rothbart*, 723 F.2d 752, 754-55 (10th Cir. 1983); *United States v. Abramson–Schmeiler*, 448 F. App'x 837, 843-

4

44 (10th Cir. 2011) (unpublished)). But there is a difference between the adequacy of instructional language and its necessity. *See United States v. Guidry*, 199 F.3d 1150, 1156 (10th Cir. 1999) (explaining that our statement in a prior case—that a jury instruction on "willfulness . . . was adequate"—was "a far cry from deeming [the willfulness instruction] necessary" (citing *United States v. Winchell*, 129 F.3d 1093, 1096-97 (10th Cir. 1997)).

In telling the jury that willfulness was required for guilt and defining the term "willfully," the court implicitly told the jury that any mental state short of willfulness would not have sufficed for a finding of guilt. In similar circumstances, other courts have rejected similar challenges to jury instructions based on a failure to describe mental states falling short of willfulness. *E.g.*, *United States v. Collins*, 685 F.3d 651, 655-56 (7th Cir. 2012); *United States v. Colacurcio*, 514 F.2d 1, 8 (9th Cir. 1975).

We did the same in *United States v. Guidry*, 199 F.3d 1150, 1156 (10th Cir. 1999). There the defendant was convicted of willfully filing a false tax return, arguing on appeal that the district court had failed to adequately define willfulness. *Guidry*, 199 F.3d at 1153, 1156. The district court instructed the jury that "'the term 'willfully' means to voluntarily and intentionally violate a known legal duty.'" *Id.* (quoting the district court's jury instructions). The defendant contended that the court should have gone further by incorporating her proposed instruction that negligent conduct was insufficient to constitute willfulness. *Id.*

5

We rejected this contention, holding that the district court had correctly stated the law and had not needed to refer to negligent conduct. *Id.*

*Guidry* is controlling. In our case, as in *Guidry*, the district court correctly instructed the jury on the meaning of willfulness. *See* p. 3, above. The district court did not give examples of what would have fallen short of willfulness. But we said in *Guidry* that the district court could decline to give the proposed example (negligent conduct). *See* pp. 5-6, above. Our holding in *Guidry* would eliminate the need for similar examples in Ms. Kupfer's case (negligence, inadvertence, accident, mistake, or recklessness). The jury was told what the term "willfully" meant, and anything short of that definition would have been inadequate for a finding of guilt. Under *Guidry*, that was enough.

In her two appellate briefs, Ms. Kupfer attempts to distinguish *Guidry* for different reasons. Both attempts are unconvincing.

In her opening brief, Ms. Kupfer asserts that *Guidry* is different because there the defendant "did not present any type of good faith defense." Appellant's Opening Br. at 19 n.3. This assertion is unsupported, for our opinion in *Guidry* did not say what the trial defenses had been. We did say, however, that the defendant had argued that "'willfulness [could not] be inferred from a mere understatement of income.'" *Guidry*, 119 F.3d at 1157. Ms. Kupfer's argument on willfulness is virtually identical.

6

In her reply brief, Ms. Kupfer argues that *Guidry* differed because there the defendant had argued that the instruction on willfulness was erroneous (rather than inadequate to convey a defense of good faith). Appellant's Reply Br. at 5-6. This argument rests on a misreading of *Guidry*. There we stated that the defendant had argued that the district court "inadequately defined the term 'willfully' as it pertain[ed] to the crime of filing a false tax return." *Guidry*, 199 F.3d at 1156. We explained that the defendant had based this argument on the failure to include her requested language on what would have been inadequate for a finding of willfulness. *Id.* Ms. Kupfer's argument is virtually identical to the one unsuccessfully pursued in *Guidry*.

Under *Guidry,* we conclude that the district court acted within its discretion by declining to use Ms. Kupfer's proposed language in the jury instruction.

## III.  Juror's Remarks About Uncharged Misconduct

After the trial, both sides presented affidavits from a single juror, Ms. Isabel Blea. In the affidavit submitted by Ms. Kupfer, Ms. Blea stated that another juror had said during deliberations that

- Armando Gutierrez and Associates were on the news,
- the matter involved a big scandal,
- there were other indictments connected to the Kupfers, and
- the case was big.

7

R., vol. I, at 432. Based on this affidavit, Ms. Kupfer asked for a hearing and moved for a mistrial. In response, the government submitted a second affidavit by Ms. Blea. *Id.* at 444. In this affidavit, she said that the other juror had twice made improper comments but had not made any additional statements in the presence of Ms. Blea. Based on the two affidavits, the district court declined the request for a hearing and denied the motion for a mistrial. Ms. Kupfer contends that the district court erred in both respects. We reject these contentions.

## A. Denial of a Hearing

The threshold issue is whether the district court erred in declining to conduct a hearing. On this issue, we review the district court's decision under the abuse-of-discretion standard. *United States v. Davis*, 60 F.3d 1479, 1483 (10th Cir. 1995). Applying this standard, we conclude that the district court acted within its discretion in declining to order a hearing.

When extraneous information is injected into jury deliberations, we ordinarily require a hearing to ferret out what was said and how it might have resulted in prejudice. *See United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988) ("When a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice."). But this requirement is not inflexible. *See Davis*, 60 F.3d at 1482-83 ("[W]hile a hearing might be prudent or otherwise appropriate, we have never held it was absolutely

8

mandatory."). Thus, we have held that a district court can decline a hearing when it would not provide additional relevant information. *See United States v. McVeigh*, 153 F.3d 1166, 1186 (10th Cir. 1998) (stating that "on rare occasions it is within the district court's discretion to refuse to hold a hearing" when there are extraneous influences on the jury and "it can clearly be established that a hearing would not be useful or necessary"). That holding applies here, for the district court implicitly concluded the hearing would not prove beneficial.[1]

In district court, Ms. Kupfer did not (1) expressly request a hearing in her opening brief or (2) suggest any facts that could be developed in a hearing. Though she urged a need for an investigation into what had taken place, she acknowledged that "[w]here the fact of extraneous information ha[d] been established to the district court by way of affidavit, . . . a court [could] exercise its discretion and not hold an evidentiary hearing." Appellant's App., vol. I, at

---

[1] The district court did not explicitly state this conclusion, but it is implicit in the ruling. The district court stated that the juror's reference "to the state court case [had been] short and [had been] curtailed upon the juror being told to stop." R., vol. I, at 460. Thus, the court distinguished an Eighth Circuit case recognizing the need for a hearing to determine how long the extraneous information had been available to the jury, whether it had been discussed, and whether it had been reasonably likely to affect the verdict. *Id.* (discussing *United States v. Hall*, 85 F.3d 367 (8th Cir. 1996)).

9

424-25.[2] Ms. Kupfer's initial position supplied little reason to think a hearing would be useful.

Even without a hearing, the court already had two affidavits from the same juror, stating precisely what had been said. With these affidavits, the district court could reasonably conclude that it had all of the material information that might have been ascertained in a hearing. *See United States v. Davis*, 60 F.3d 1479, 1482-84 (10th Cir. 1995) (upholding the denial of a hearing when the district court had an affidavit providing undisputed evidence that jurors had watched news reports of the trial in violation of the court's admonition). In these circumstances, the court could reasonably conclude that a hearing would not have provided additional relevant information.[3]

The remaining issue involved prejudice. To determine whether the extraneous influence was prejudicial, the district court had to analyze what had

---

[2]    Ms. Kupfer changed her approach in her reply brief. There she argued that the affidavits had not shown the number of jurors exposed to the extraneous information, when in the deliberations the extraneous information had been mentioned, whether a subset of jurors had discussed the extraneous information, and whether the other juror had responded candidly during voir dire. R., vol. I, at 453-54. But in the District of New Mexico, arguments omitted in the opening brief are generally considered waived. *See Brubach v. Albuquerque*, 893 F. Supp. 2d 1216, 1237 n.6 (D. N.M. 2012) ("The Court declines to consider an argument raised for the first time in a reply.").

[3]    The court also reasoned that the juror's comments had not triggered a presumption of prejudice. R., vol. I, at 459. For the sake of argument, we can assume that this reasoning was incorrect. Apart from the absence of a presumption of prejudice, the court declined to conduct a hearing because it would not have provided additional relevant information. *See* p. 9 n.1, above.

been said and compare it to the information properly before the jury. *United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988). For this inquiry, however, the court might have been skeptical about the usefulness of a hearing. The district court already had two affidavits identifying the juror's statements about the uncharged misconduct. *See United States v. McVeigh*, 153 F.3d 1166, 1186-88 (10th Cir. 1998) (upholding the denial of a hearing in part because the district court already knew from an alternate juror's report who had made the statement, what had been said, and what the surrounding circumstances were).

The court could not have known the impact of those statements, but that would have remained true even after a hearing. *See United States v. Simpson*, 950 F.2d 1519, 1521 (10th Cir. 1991) (stating that an evidentiary hearing would have been futile because Fed. R. Evid. 606(b) prohibited juror testimony on the effect of extraneous information in the jury's deliberations). Thus, the court could reasonably conclude that a hearing would have added little useful information.

In urging an abuse of discretion, Ms. Kupfer relies largely on *Stouffer v. Trammell*, 738 F.3d 1205 (10th Cir. 2013). In *Stouffer*, we held that the state trial court had abused its discretion by declining to order a mistrial (1) with undisputed evidence of jury tampering through nonverbal communication and (2) without any explanation about why the jury tampering would have been harmless. *Stouffer*, 738 F.3d at 1217, 1219 n.10. Though we regarded the trial court's inadequate inquiry as an abuse of discretion, we did not suggest that a hearing would have

11

been necessary even if the court could reasonably conclude that it had all the material information about the nature and impact of the extraneous influence. Indeed, any such suggestion would have contradicted our existing precedents. *See, e.g.*, *United States v. Davis*, 60 F.3d 1479, 1483 (10th Cir. 1995) ("[T]he decision whether to grant or deny a hearing on a claim that a juror was improperly exposed to extraneous information is vested in the broad discretion of the district courts, and we will review the denial of a request for such a hearing only for an abuse of discretion.").

Under these precedents, the district court had the discretion to decide the motion for a mistrial without conducting a hearing.

## B.     Denial of a Mistrial

The remaining issue is whether the district court erred in denying this motion. Our scrutiny is limited, for we can reverse only if the district court abused its discretion. *United States v. Robertson*, 473 F.3d 1289, 1294 (10th Cir. 2007). We conclude that the district court did not abuse its discretion.

The court reasonably regarded the extraneous influence as harmless. The affidavits reflected two comments about other charges, describing the scandal and the case as big and referring to other indictments and news reports. *See* pp. 7-8, above. But the evidence against Ms. Kupfer on the tax charges was overwhelming.

12

For a conviction, the government had to convince the jury of three elements:

1.    a substantial tax liability,

2.    willfulness, and

3.    an affirmative act constituting evasion of the tax.

*United States v. Farr*, 701 F.3d 1274, 1285 (10th Cir. 2012) (citing 26 U.S.C. § 7201).

Ms. Kupfer essentially admitted the first and third elements in opening statements, conceding that she had failed to report substantial income on her tax returns. With this concession, Ms. Kupfer relied solely on a defense that she had not acted willfully. But the government's evidence of willfulness was overwhelming, showing that Ms. Kupfer had failed to report over $790,000 in gross income, had personally deposited a check for $140,000 without reporting this income, and had obtained substantial experience in accounting and finance.

In the face of that evidence, Ms. Kupfer defended on the ground that her failure to report over $790,000 in income was a mistake. In support of this argument, Ms. Kupfer offered evidence of her consensual participation in an informal audit. But the informal audit was based solely on the tax information provided voluntarily by the Kupfers, and there was no evidence suggesting that the auditors were aware of the unreported income.

Ms. Kupfer also offered evidence that she had relied on the services of a tax preparer. But Ms. Kupfer did not disclose the unreported income to the tax preparer, and the preparer's engagement letter stated that

- the client bore the "responsibility to provide all of the information required for the preparation of complete and accurate returns," and

- his services were not "designed to discover thefts or other irregularities should any exist."

Appellant's App., vol. IV, at 658, 683.

In these circumstances, the district court could reasonably conclude that the extraneous information would have been harmless. As a result, the court acted within its discretion in declining to grant a mistrial. *See United States v. Hornung*, 848 F.2d 1040, 1045-46 (10th Cir. 1988) (upholding the denial of a mistrial based on harmlessness because the evidence of guilt was overwhelming).

## IV. Calculation of the Offense Level for Sentencing

The remaining issue involves the sentence. To impose the sentence, the district court started with the sentencing guidelines. In calculating the guideline range, the court increased the offense level based on § 3C1.1. This provision provides for an increase in the offense level if the defendant willfully obstructed the investigation. U.S.S.G. § 3C1.1. Ms. Kupfer challenges the application of § 3C1.1, and the government concedes error. We agree with the parties that the court erred in increasing the offense level.

14

We have held that § 3C1.1 does not apply when defendants simply tell investigators that they did not commit a crime. *United States v. Urbanek*, 930 F.2d 1512, 1515 (10th Cir. 1991). Ms. Kupfer did even less than that because her sin was one of omission rather than commission. She simply failed to speak up and disclose the unreported income as authorities investigated. Her failure to speak up cannot serve as the basis for an increase in the offense level under § 3C1.1. *See United States v. Pelliere*, 57 F.3d 936, 939 (10th Cir. 1995) (stating that "refusals to talk cannot serve as the basis for an obstruction of justice enhancement" under § 3C1.1). As a result, the district court should not have increased the offense level based on § 3C1.1.

In light of the error, the government concedes that we should vacate the sentence and remand for resentencing. We agree.

## V.     Conclusion

Accordingly, we (1) affirm the conviction and (2) remand to the district court with directions to resentence Ms. Kupfer consistently with this opinion.

15