**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David Michael FAUST, Defendant–**
**Appellant.**

No. 14–8011.

United States Court of Appeals,
Tenth Circuit.

Aug. 4, 2015.

Dion J. Custis, Cheyenne, WY, for Defendant–Appellant.

Thomas Andrew Szott, Assistant United States Attorney (Christopher A. Crofts, United States Attorney, with him on the brief), Cheyenne, WY, for Plaintiff–Appellee.

Before BRISCOE, Chief Judge, HOLMES and BACHARACH, Circuit Judges.

HOLMES, Circuit Judge.

Defendant–Appellant David Michael Faust was convicted of attempted online enticement of a minor in violation of 18 U.S.C. § 2422(b). Mr. Faust challenges his conviction on two grounds. First, he argues that there was insufficient evidence of intent to engage in illegal sexual activity with a minor to support his conviction. Second, he contends that the district court abused its discretion by refusing to provide his proposed specific-intent jury instruction. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm**.

## I

On August 6, 2013, a Federal Bureau of Investigation ("FBI") agent assigned to the Wyoming Internet Crimes Against Children ("ICAC") task force posted an advertisement on the website "backpage.com." The advertisement was titled "Traveling mom looking for fun in NE Wyoming—WW4M—37," and stated: "be in gillette 2night through the weekend my daughter is eager to learn about the area and has a budding personality." R., Vol. IV, Gov't Ex. 2 (Internet posting, dated Aug. 6, 2013).[1] An individual identifying himself as "David," and using the email address "dfaust666@yahoo.com," responded to the posting with the following message:

Hi,

My name is David, I am single 41 I am actually in cheyenne wy I know you have said you are going to be in NE Wyoming would you consider coming to cheyenne wy at any time during the weekend. I would love to hear back from you at my email or if you want txt or call me [number omitted] I would love to see the both of you.

David

*Id.,* Gov't Ex. 3, at 1 (Email messages, dated Aug. 6–13, 2013). Working with intelligence analysts, the ICAC task force

---

1. Because the tone and content of the communications with the undercover FBI agent are particularly relevant features in this case—due to the nature of Mr. Faust's charged offense (i.e., attempted enticement of a minor) and his appellate challenges—we quote those communications with as few editorial alterations as possible. For example, ordinarily, we do not correct capitalization errors or other similar typos. And, because typos are common, we do not insert the "sic" notation, so as to avoid cluttering the quoted text.

determined that there was, in fact, a 41–year–old Cheyenne resident named David Faust.

Between August 6 and August 13, the FBI agent, using the alias "Joelle," exchanged a total of forty-five email messages with "David." "Joelle" pretended to be a 37–year–old woman with a twelve-year-old daughter. "David" expressed interest in having a sexual encounter with both "Joelle" and her daughter. "David" and "Joelle" agreed to the following parameters: (1) oral and vaginal sex would be permitted with both the mother and the daughter; (2) "David" would be required to use condoms; (3) "Joelle" would provide the motel room; and (4) the price would be $200 for one hour. "Joelle" indicated that they would be in Cheyenne, Wyoming, on August 13 or 14. In three separate email messages, "David" expressed concern about getting into trouble because of the age of the daughter.[2]

On August 13, 2013, around 12:00 noon, the FBI agent sent "David" an email indicating that "Joelle" and her daughter were in Cheyenne. About an hour later, the FBI agent sent "David" a text message, stating: "hey made it to cheyenne. you still in town? joelle." *Id.*, Gov't Ex. 4, at 1 (Text messages, dated Aug. 13, 2013). "David" attempted to call "Joelle" three times, but "Joelle" never answered the phone.[3] They exchanged additional text messages. "David" indicated that he still wanted to meet, and "Joelle" informed him that she was at the Round Up Motel.

"David" explained that he did not have the agreed-upon $200, but asked, "Do u still want me to come play with u and ur daughter." *Id.* "Joelle" replied, "guess if you want. i got my period anyway so i cant do anything but my dau is good. not sure what u want exactly." *Id.* at 1–2. "David" stated, "Since 1 dont have the money 1 guess we dont do anything unless u want me to." *Id.* at 2. "Joelle" replied, "dude i dont care either way." *Id.* "David" asked, "Do u want to have sex with her . . . Do u want me to come have sex with her[ ]." *Id.* "Joelle" answered, "lol its not that i want you to. if u want to cool. if you dont thats cool to.for her it would be about learning. its no[t] like it is for a adult." *Id.* At 3:08 p.m., "David" wrote, "Ok 1 can be there n 10 mins." *Id.*

The FBI agent had previously arranged for Homeland Security Investigations ("HSI") agents to conduct surveillance at Mr. Faust's home. Shortly after the last text message, the FBI agent received a phone call from an HSI agent indicating that Mr. Faust was getting into his truck and leaving his house. Because the FBI agent had not intended to meet "David" until 4:00 p.m., the FBI agent and other members of the ICAC task force were still at their office. At 3:11 p.m., "Joelle" sent

---

**2.** On August 7, 2013, at 3:54 p.m., "David" asked: "Also nothing will ever happen with me for being with you and your very young daughter, just asking." R., Vol. IV, Gov't Ex. 3, at 32. In a subsequent message, at 9:15 p.m., he stated: "I understand, so I asked I just want to make sure nothing will happen with me being with your daughter since she is so young, and your daughter will suck my dick and I can do oral on her and she will take me deep in her and the same to you also." *Id.* at 36. Finally, at 9:28 p.m., "David" clarified his concerns: "And as far as her not being of age no legal stuff in the future. I hope you understand." *Id.* at 39.

**3.** The FBI agent had arranged for a female employee of the Wyoming Division of Criminal Investigations to impersonate "Joelle" and to record a short voicemail greeting. "David" called "Joelle" and left the following voicemail message: "Hi Joelle, this is David. You just sent me a text message? I actually live in Cheyenne. If you'd give me a call, it's [number omitted]. Thanks, bye." R., Vol. IV, Gov't Ex. 5 (Voicemail recording, dated Nov. 18, 2013). "David" attempted to call "Joelle" two more times, but "Joelle" never answered.

"David" a text message to ask what he was drying, at which point the FBI agent and members of the ICAC task force began driving to the Round Up Motel. Separately, the HSI agent followed Mr. Faust to the motel.

After following him for approximately three to five minutes, the HSI agent watched as Mr. Faust turned into the parking lot of the motel. Meanwhile, "Joelle" received another text message from "David," asking, "Will u stand outside of ur room." *Id.* The FBI agent learned from the HSI agent that Mr. Faust was pulling into the motel. The FBI agent then asked the HSI agent to arrest Mr. Faust. As the HSI agent arrived at the motel, he observed Mr. Faust completing a U-turn in the motel parking lot. The HSI agent turned into the parking lot and activated his lights. Mr. Faust pulled around him and back out onto the highway, and stopped his vehicle along the side of the road.

The HSI agent arrested Mr. Faust, and the FBI agent and other members of the ICAC task force arrived a short time later. A member of the task force found a cell phone in Mr. Faust's pocket, and condoms inside the center console of his truck. A subsequent investigation and forensic analysis of Mr. Faust's online accounts, cell phone, phone records, and home computer confirmed that "David" was indeed Mr. Faust (a fact that is not disputed on appeal). Mr. Faust admitted to law enforcement agents at the scene that he had communicated with "Joelle" in order to arrange a sexual encounter, and acknowledged that the only sexual participant at the motel would have been the twelve-year-old child. Nevertheless, he claimed that he had seen children in the parking lot of the motel and changed his mind about the encounter.

In a one-count indictment, a federal grand jury sitting in the United States District Court for the District of Wyoming charged Mr. Faust with attempted online enticement of a minor in violation of 18 U.S.C. § 2422(b). Mr. Faust pleaded not guilty, and the government tried its case before a jury. After the close of evidence, Mr. Faust proposed a pattern jury instruction regarding specific intent. The district court refused the instruction, and Mr. Faust offered no objection to the court's refusal. The jury returned a guilty verdict. The court sentenced Mr. Faust to 120 months' imprisonment and ten years of supervised release. Mr. Faust timely appealed.

## II

Mr. Faust challenges his conviction on two grounds. First, he argues that there is insufficient evidence of intent to support his conviction. Second, he argues that the district court abused its discretion by refusing to give the jury his proposed specific-intent jury instruction. We reject both of these arguments.

### A

Mr. Faust challenges the sufficiency of the evidence supporting his conviction. Specifically, because he was arrested as he was leaving the parking lot of the motel, Mr. Faust contends that he did not take a substantial step towards engaging in illegal sexual activity with a minor.

#### 1

We review sufficiency of the evidence claims de novo. *United States v. Serrato,* 742 F.3d 461, 472 (10th Cir.2014), *cert. denied,* —— U.S. ——, 134 S.Ct. 2739, 189 L.Ed.2d 775 (2014); *United States v. Chavis,* 461 F.3d 1201, 1207 (10th Cir. 2006). "The question for the court is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt.'" *Serrato,* 742 F.3d at 472 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

**2**

Mr. Faust was convicted of attempted online enticement of a minor in violation of 18 U.S.C. § 2422(b). In relevant part, § 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce ... knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in ... any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so,* shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (emphasis added).

 To establish a violation of § 2422(b), the government must prove the defendant guilty of the following four elements: "(1) use of a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) any individual who is younger than 18; (4) to engage in any sexual activity for which any person can be charged with a criminal offense, or attempting to do so." *United States v. Thomas,* 410 F.3d 1235, 1245 (10th Cir. 2005). Because Mr. Faust was communicating with an undercover FBI agent, and could not have actually enticed a minor, he was charged with attempt. *See id.* To prove attempt, "the government had to show that [the] [defendant] took a 'substantial step' towards the commission of the ultimate crime, and that such step was more than mere preparation." *Id.* (second alteration in original) (quoting *United States v. Munro,* 394 F.3d 865, 869 (10th Cir.2005)). "A highly fact-specific inquiry is necessary to properly assess whether a defendant's actions amount to an 'attempt,' and, in particular, whether his actions qualify as a 'substantial step.'" *United States v. Irving,* 665 F.3d 1184, 1195 (10th Cir.2011) (citing, *inter alia, United States v. DeSantiago–Flores,* 107 F.3d 1472, 1479 (10th Cir.1997), *overruled on other grounds by United States v. Holland,* 116 F.3d 1353, 1359 n. 4 (10th Cir.1997) (en banc footnote)).

According to Mr. Faust, "leaving the parking lot upon arrival shows that he had no intention of following through with the arrangement for a sexual encounter with Joelle and her daughter." Aplt. Opening Br. at 8. Thus, he contends, the government failed to show that he took a substantial step towards the fourth element of the offense, illegal sexual activity.[4] Although a rational jury might well disagree with Mr. Faust's characterization of his conduct in departing from the parking lot,[5] his argument fails for a more fundamental legal reason—*viz.,* Mr. Faust's argument is predicated on a misunderstanding of the mens rea element of the offense.

---

4. In a single sentence of his brief, Mr. Faust intimates that his argument might involve more than the fourth element, stating "Mr. Faust's leaving the parking lot upon arrival.... was not a substantial step toward *any element* of the offense." Aplt. Opening Br. at 8–9 (emphasis added). Mr. Faust, however, does not elaborate on this bare assertion; thus, we may rightly deem any argument that could be based on it to be waived. *See, e.g., United States v. Pursley,* 577 F.3d 1204, 1231 n. 17 (10th Cir.2009) ("[A]lthough Mr. Pursley alluded to [an] issue in his appellate brief, that skeletal reference does not present a cognizable issue for appellate review."). In any event, as we make clear *infra,* whether Mr. Faust immediately left the parking lot or not is immaterial to the question of whether there was sufficient evidence to establish that he took the requisite substantial step toward completion of the § 2422(b) offense.

5. A rational trier of fact could have very easily determined that Mr. Faust left the parking lot because he did not see "Joelle" standing in front of the motel room, as he had requested.

■ "Section 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act." *Thomas*, 410 F.3d at 1244. As the Sixth Circuit has explained:

> While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. *Hence, a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade.*

*United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (emphasis added). In other words, the statute criminalizes "the sexual grooming of minors," regardless of any intent to consummate the illegal sexual activity. *United States v. Berg*, 640 F.3d 239, 252 (7th Cir.2011); *see id.* ("The statute's focus is on the intended effect on the minor rather than the defendant's intent to engage in sexual activity.").

■ Thus, in order to sustain a conviction under § 2422(b), the government only needed to show that Mr. Faust took a "substantial step" towards the inducement, enticement, or persuasion of a minor—not towards the element of illegal sexual activity. *See Thomas*, 410 F.3d at 1246 ("[The defendant] crossed the line from 'harmless banter' to inducement the moment he began making arrangements to meet [the minor], notwithstanding the lack of evidence that he traveled to the supposed meeting place."). This also appears to be the consensus position among the other circuits that have considered the issue.[6]

■ With the mens rea element of the statute properly understood, we conclude

---

**6.** *See, e.g., United States v. Engle*, 676 F.3d 405, 419 (4th Cir.2012) ("Section 2422(b) 'was designed to protect children from the act of solicitation itself,' and it 'criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions [concerning] the actual consummation of sexual activities with the minor.'" (alteration in original) (citations omitted) (quoting *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir.2011); *United States v. Berk*, 652 F.3d 132, 140 (1st Cir.2011))); *United States v. Broussard*, 669 F.3d 537, 548 (5th Cir.2012) ("[A] conviction under § 2422(b) 'does not require that the sexual contact occur, but that the defendant sought to persuade the minor to engage in that contact.'" (quoting *United States v. Barlow*, 568 F.3d 215, 219 n. 10 (5th Cir.2009))); *Berg*, 640 F.3d at 252 ("The statute's focus is on the intended effect on the minor rather than the defendant's intent to engage in sexual activity."); *United States v. Lee*, 603 F.3d 904, 914 (11th Cir.2010) ("With regard to intent, the government must prove that the defendant intended to cause assent on the part of the minor, not that he 'acted with the specific intent to engage in sexual activity.'" (quoting

*United States v. Yost*, 479 F.3d 815, 819 n. 3 (11th Cir.2007))); *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir.2007) ("Section 2422(b) criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor."); *United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir.2007) (per curiam) (explaining that an attempted violation of § 2422(b) "is an attempt to achieve the mental act of assent, for which physical proximity can be probative but is not required"); *United States v. Brand*, 467 F.3d 179, 202 (2d Cir.2006) ("A conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion."); *United States v. Patten*, 397 F.3d 1100, 1103 (8th Cir.2005) ("[T]he intent that violates § 2422(b) is the intent to persuade a minor to engage in illegal sexual activity."); *Bailey*, 228 F.3d at 639–40 (finding sufficient evidence where the defendant sent email messages to minors proposing to meet for oral sex but did not ever travel to meet the girls). *See generally* Andriy Pazuniak, Comment, *'A Better Way to Stop Online Predators: Encouraging a*

that the government presented ample evidence to support Mr. Faust's conviction under § 2422(b). By his own admission, Mr. Faust explicitly pursued through written communications his desire to have a sexual encounter with a 12–year–old girl, discussing in graphic detail precisely what sexual acts would be allowed, negotiating a price, and agreeing to a meeting place.[7] After learning that the mother would be sexually unavailable, Mr. Faust persisted in his efforts to arrange a sexual encounter solely with the child. Even if Mr. Faust had never traveled to the motel, this evidence alone was sufficient to support a conviction under the statute. Indeed, from a sufficiency-of-the evidence perspective, whether Mr. Faust got out of his vehicle or not was immaterial.

To be sure, Mr. Faust's travel to the motel with his stated plan of having a

sexual encounter with "Joelle's" twelve-year-old daughter and also his contemporaneous possession of condoms may well have bolstered the government's proof of his intent to persuade, induce, or entice a minor to engage in sexual activity. *See Thomas*, 410 F.3d at 1246 ("The substantial step ... is strengthened by the evidence of [the defendant's] venture to meet [the minor].."). Nevertheless, the government was not *required* to prove that Mr. Faust intended to actually engage in sexual activity with the child.

The government presented ample evidence from which a rational factfinder could find beyond a reasonable doubt that Mr. Faust intended to persuade, induce, or entice someone whom he believed to be a 12–year–old child to engage in illegal sexual activity and that he took a substantial step in furtherance of this intent. Nothing more is required to satisfy the mens rea

---

*More Appealing Approach to § 2422(b)*, 40 Seton Hall L.Rev. 691, 704 (2010) ("To conduct a proper § 2422(b) analysis, courts must first recognize that § 2422(b) does not require a defendant to demonstrate an intent to actually engage in illegal sexual activity with a minor. Rather, a defendant violates § 2422(b) by merely attempting to persuade a minor to engage in illegal sexual activity.").

7. To be sure, we recognize that Mr. Faust's enticing communications were with someone he believed to be an adult, rather than a child—that is, "Joelle," the mother of the twelve-year-old. However, in his appellate briefing, Mr. Faust never contended that this is a matter of material consequence. It was only at oral argument that Mr. Faust, for the first time, suggested that the evidence was insufficient to support his conviction because it did not establish that he ever directly communicated with (i.e., enticed) a minor or believed that he was doing so. Our survey of legal authorities intimates that, even if this argument had been preserved, Mr. Faust's pursuit of it would (at a minimum) not be free of travails. *See, e.g., United States v. Hite*, 769 F.3d 1154, 1160 (D.C.Cir.2014) (collecting cases and holding "that communications with

an adult intermediary to persuade, induce, entice, or coerce a minor are punishable under § 2422(b), so long as the defendant's interaction with the intermediary is aimed at transforming or overcoming the minor's will in favor of engaging in illegal sexual activity"). But, more to the point, it is patent from Mr. Faust's conduct in the district court and before us that the argument has not been preserved. The district court specifically addressed this subject in a jury instruction, which provided the following:

> [I]t is not a defense ... that the defendant did not communicate with an actual minor. Likewise, it is not necessary that the defendant communicate with a person he believed to be a minor. Rather, it is sufficient if the defendant communicated with an adult intermediary he believed would persuade, induce, entice, or coerce a minor to engage in an unlawful sexual act.

R., Vol. I, at 52 (Jury Instrs., dated Nov. 21, 2013). Mr. Faust failed to challenge this instruction in the district court, and he has not done so in his appellate briefing before us. Therefore, any such argument is waived. *See United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir.2004) ("The failure to raise an issue in an opening brief waives that issue.").

element of the statute. Accordingly, Mr. Faust's sufficiency-of-the evidence challenge fails.

## B

Mr. Faust next argues that his conviction must be reversed because the district court refused to give a specific-intent jury instruction on his theory of defense.

### 1

Ordinarily, we review a district court's refusal to give a requested jury instruction for abuse of discretion. *See, e.g., United States v. Moran,* 503 F.3d 1135, 1146 (10th Cir.2007); *see also United States v. Kupfer,* 792 F.3d 1226, 1229, 2015 WL 4081108, at \*2 (10th Cir.2015) ("Our scrutiny is limited, for we consider the refusal to give a requested jury instruction under the abuse-of-discretion standard."). In order to assess whether the court properly exercised its discretion, "we review the jury instructions de novo to determine whether, as a whole, they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *Moran,* 503 F.3d at 1146 (quoting *United States v. Crockett,* 435 F.3d 1305, 1314 (10th Cir.2006)). "We reverse only if prejudice results from a court's refusal to give a requested instruction." *United States v. Turner,* 553 F.3d 1337, 1347 (10th Cir.2009); *see also United States v. Haslip,* 160 F.3d 649, 654 (10th Cir.1998) ("We reverse only if we have a substantial doubt the jury instructions properly guided the jury in its deliberations *and* we find prejudice.").

At the outset, we note that Mr. Faust has at least arguably forfeited his instructional challenge by failing to object when the court refused his proposed instruction.[8] Usually, "when a party fails to lodge an objection at trial to purported errors—be they instructional or otherwise—... he cannot 'prevail unless he could successfully run the gauntlet created by our rigorous plain-error standard of review.'" *United States v. Banks,* 761 F.3d 1163, 1185 (10th Cir.2014) (quoting *United States v. McGehee,* 672 F.3d 860, 876 (10th Cir.2012)), *cert. denied,* —— U.S. ——, 135 S.Ct. 308, 190 L.Ed.2d 142 (2014).

In particular, the obligation to lodge an objection with respect to jury instructions is set forth in Federal Rule of Criminal Procedure 30(d):

> A party who objects to any portion of the instructions *or to a failure to give a requested instruction* must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate.... Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

Fed.R.Crim.P. 30(d) (emphasis added); *see also Jones v. United States,* 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) ("Nor does a request for an instruction before the jury retires preserve an objection to the instruction actually given by the court."); *United States v. Visinaiz,* 428 F.3d 1300, 1308 (10th Cir.2005) ("When no objection to a jury instruction was made at trial, the adequacy of the instruction is reviewed de novo for plain error.").

---

**8.** After the close of the evidence, the district court held a brief off-the-record conference in chambers regarding the jury instructions. The court then came back on the record to announce the results of the conference. It noted that Mr. Faust had requested an instruction concerning specific intent, and indicated that it had marked that instruction as refused. The court specifically invited objections, asking, "does the defense have any further instructions it wishes to offer in this matter or objections to instructions?" R., Vol. III, at 269 (Trial Tr., dated Nov. 19–21, 2013). Neither party offered any objection.

In his briefing, Mr. Faust intimates that the plain-error standard may apply. *See* Aplt. Opening Br. at 4 ("Forfeited issues are reviewed for plain error.... When no objection to a jury instruction was made at trial, the adequacy of the instruction is reviewed de novo for plain error." (citations omitted)). But, notably, the government never raised Mr. Faust's failure to preserve his instructional challenge in its appellate briefing. And, during oral argument, the government even expressly indicated that it was waiving any forfeiture of the issue. Accordingly, irrespective of whether Mr. Faust in fact failed to preserve his jury-instruction challenge, our review is for abuse of discretion. *See Abernathy v. Wandes,* 713 F.3d 538, 552 (10th Cir.2013) ("We elect to consider [the defendant's] ... argument, at least in part, because the government neglected to raise his failure to preserve the argument in its briefing. Such an instance of neglect could function as a forfeiture of the opportunity to hold [the defendant] to his failure to preserve his argument."); *cf. United States v. Heckenliable,* 446 F.3d 1048, 1049 n. 3 (10th Cir. 2006) ("Defendant concedes he did not challenge the validity of his plea before the district court. The Government, however, does not argue Defendant waived his present challenge, and accordingly, has waived the waiver.").

**2**

Mr. Faust's proposed instruction was taken from 1 Devitt & Blackmar, *Federal Jury Practice and Instructions* § 14.03 (3d ed.1977). It provided as follows:

> The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.
>
> An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

R., Vol. I, at 24 (Rejected Jury Instr., filed Nov. 21, 2013). The government acknowledges that this instruction is "technically correct," but argues that it is "vague, potentially misleading, and unnecessary." Aplee. Answer Br. at 24.

Mr. Faust contends that the district court's refusal to provide the requested instruction amounts to a denial of the right to present his defense. Notably, he ties his jury-instruction argument to the defense theory underlying his sufficiency-of-the-evidence challenge. Specifically, Mr. Faust reasons that the government was obliged to show that he possessed the specific intent to engage in illegal sexual activity with a minor (as opposed to intent to entice a minor), and the jury erroneously convicted him because the court declined to give it his specific-intent instruction.

In our view, Mr. Faust's linkage of his instructional argument to the theory underlying his sufficiency-of-the-evidence challenge perforce dooms the former. As we explained *supra,* there is no legal support for Mr. Faust's defense theory that the government was required to prove that he possessed the intent—whether specific or otherwise—to engage in illegal sexual activity with a minor.[9] Therefore, Mr.

---

9. Mr. Faust relies primarily on *United States v. Toledo,* 739 F.3d 562 (10th Cir.2014). In *Toledo,* we reversed a defendant's conviction for voluntary manslaughter and remanded for a new trial in light of the court's refusal to provide jury instructions regarding self-defense and involuntary manslaughter. *Id.* at 567–69. We concluded that, if members of

Faust could not have been prejudiced by the district court's refusal to give an instruction that would have underscored the government's nonexistent burden to prove such intent.

Furthermore, we are well aware that the requested specific-intent instruction and ones of its ilk have been roundly criticized as vague and confusing. In *United States v. Winchell*, 129 F.3d 1093 (10th Cir.1997), we considered a specific-intent jury instruction similar to the instruction at issue.[10] Rejecting the defendant's argument—ostensibly justifying his entitlement to a specific-intent instruction—we explained that "instructing in terms of 'specific intent' has been disfavored by the courts because of the confusing and ambiguous nature of such an instruction." *Id.* at 1096 (quoting *United States v. Laughlin*, 26 F.3d 1523, 1527 (10th Cir.1994)). According to *Winchell*, rather than give such a diffuse and enigmatic intent instruction, our court has historically opted for a more narrowly-focused, offense-specific intent instruction. *See id.* at 1097 (noting that "we have endorsed instructions which adequately 'apprise the jury of the *mens rea* element of the offense'" (quoting *Laughlin*, 26 F.3d at 1527)).

This approach is consonant with the Supreme Court's observations in *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). There, the Court discussed the Devitt and Blackmar instruction at issue here. *See id.* at 422 n. 3, 105 S.Ct. 2084. Although the Court de-

clined to pass on the validity of the instruction, it noted:

> This instruction has been criticized as too general and potentially misleading, see *United States v. Arambasich*, 597 F.2d 609, 613 (C.A.7 1979). A more useful instruction might relate specifically to the mental state required under [the relevant statute] and eschew use of difficult legal concepts like "specific intent" and "general intent."

*Liparota*, 471 U.S. at 433 n. 16, 105 S.Ct. 2084. The Court cited to *Arambasich*, where the Seventh Circuit elaborated on the relevant concerns:

> It is not very helpful to speak of a defendant's "purpose" to violate the law, as do these stock instructions. Use of the phrase "purposely intending to violate the law" may be erroneously interpreted by jurors, for example, to require that the defendant know his act violates a criminal statute, which is ordinarily unnecessary. Giving one of the stock instructions may therefore not only confuse but mislead the jury to the prejudice of the prosecution. A trial judge is accordingly justified in refusing to give it, if he adequately instructs on the requisite mental state by other means.

*Arambasich*, 597 F.2d at 612–13 (citation omitted). Indeed, if all of this were not enough to cast a heavy pall over Mr. Faust's proposed specific-intent instruction, we note that a more recent edition of the very treatise from which Mr. Faust acquired it no longer offers a sample of a

---

the jury had credited the defendant's testimony, and found that he believed he was in imminent danger of death or great bodily injury, it could have reasonably concluded that he acted in self-defense or convicted him of the lesser included offense of involuntary manslaughter. *Id.* Unlike the self-defense matter at issue in *Toledo*, however, Mr. Faust did not propose an instruction relating to a legally cognizable defense, like self-defense.

Accordingly, *Toledo* lends Mr. Faust no succor.

**10.** The instruction tendered in *Winchell* included additional language regarding reasonable doubt, but it also provided, *inter alia*, that a defendant must have been "purposely intending to violate the law." *Winchell*, 129 F.3d at 1096 n. 6 (citation omitted).

specific-intent instruction and, in fact, counsels in fairly emphatic terms against its use. *See* 1A Kevin F. O'Malley et al., *Federal Jury Practice & Instructions* § 17:03 (6th ed. 2008) ("No jury instruction is provided or should be given for the term 'specific intent' because the law has grown and now developed away from charging the jury on this concept.... Where a precise mental state is an element of the offense charged, that mental state should be clearly set out in the ... instruction to the jury.").

Therefore, in light of the foregoing, the district court would have been quite reasonable to look askance at Mr. Faust's tendered specific-intent instruction. To assess whether the court was properly within its discretion to go further and reject the instruction, it is critical for us to determine whether the court's instructions (viewed as a whole) adequately defined the requisite mens rea element of Mr. Faust's offense, apart from his proposed specific-intent instruction. We conclude that the court's instructions were indeed adequate in this regard.

Instruction 19 provided that the government must prove, *inter alia*, that Mr. Faust "[k]nowingly attempted to persuade, induce, entice, or coerce." R., Vol. I, at 47. Instruction 21 defined "knowingly" to require that a defendant was "conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident." *Id.* at 49. Instruction 26 explained that in deciding whether the mental-state element was satisfied, the jury "may consider any statements made or acts done or acts omitted by that person and all other facts and circumstances received in evidence which may aid [the jury's] determination of that person's knowledge or intent." *Id.* at 54. The jury was told that it "may infer, but [is] certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted." *Id.* Finally, Instruction 27 stated in part that, in order for the jury to find Mr. Faust guilty of the attempt offense, it must find that "the mental process of the defendant passed from the state of thinking about the crime to actually intending to commit that crime." *Id.* at 55.

Mr. Faust does not contend that any of the foregoing instructions, in themselves, misstate the governing law. And we conclude that, viewed as a whole, the district court's instructions adequately instructed the jury regarding the requisite mens rea for the § 2422(b) offense. That being so, the district court was well within its discretion to reject a problematic specific-intent instruction like the one tendered by Mr. Faust.

### III

For the foregoing reasons, we **AFFIRM** Mr. Faust's conviction.