BRISCOE, Circuit Judge,
concurring.
This case involves a lengthy trial transcript in which’the testimony was extremely unreliable and contradictory.' Iii this case, we are fortunate that the conflicting testimony is largely irrelevant to the question presented. Rather than venture into that bramble and risk misstatements, I focus only on the circumstances surrounding the three statements that McGirt made to Thompson, Bernhardt, and Wes.t and whether those statements were admissible under an exception to. the general rule against hearsay.
We review a district court’s decision to admit or exclude evidence for an abuse of discretion. United States v. Rutland, 706 F.3d 1238, 1245 (10th Cir. 2013). “Due to the fact-specific nature of a hearsay inquiry, the district court’s ruling necessitates ‘heightened deference.’” United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009) (quoting United States v. Trujillo, 136 F.3d 1388, 1395 (10th Cir. 1998)).
Applying that standard, I agree that the three hearsay statements made by McGirt identifying Magnan as the person who shot her are admissible as excited utterances. Excited utterances provide an exception to the rule against hearsay and are admissible. Fed. R, Evid. 803. An excited utterance is “[a] statement relating to a startling event or condition, made while the declarant, was under the stress of excitement that it caused.” Fed R. Evid. 803(2). Thus, this exception “has three requirements: .(1) a startling event;.(2) the statement was made while the declarant was under the stress of the event’s excitement; and (3) a nexus between the content of the statement and the event.” Pursley, 577 F.3d at 1220.
1. Thompson
.Thompson’s testimony regarding McGirt’s statement is admissible as an excited utterance. Magnan concedes that there had been a startling event and that McGirt’s statement related to that event. Aplt. Br. at 17. He challenges only the district court’s conclusion that McGirt was still under the excitement of the event when she made the statement.
*1297 According to Thompson’s testimony, he arrived on the scene approximately thirty minutes after the 911 call reporting the shooting. ROA vol. II, at 289. Coley was laying on the kitchen floor, “yelling and moaning that he had been shot in the gut.” Id. at 292. Thompson described the atmosphere inside the house as “tense” and “[k]ind of like something out of a movie” because “it was dark,” and “all the lights from the police car and ambulances were going and bouncing off the walls.” Id. at 294-95. Thompson found McGirt in a bedroom, lying next to the body of Karen Wolf who was “definitely dead at the time.” Id. Thompson testified that there was blood in the bed, that McGirt had been shot in the shoulder, and that he thought she “was probably going to die there on the scene.” Id. at 296. McGirt was able to speak but not move. Id. Thompson held his flashlight up to assist the medics as they treated McGirt. Id. at 297.
According to Bernhardt’s testimony, regarding the same time frame, McGirt “appeared to be extremely anxious” and Bernhardt “could tell that [McGirt] was in pain by the look on her face.” Id. at 309. McGirt “was obviously having trouble breathing and she was bleeding.” Id. at 310. “She was able to move her head and her upper extremities but nothing from the middle of her chest down.” Id. “Her vital signs were unstable.” Id. McGirt’s blood pressure was low so Bernhardt started two IVs, which is “standard protocol for any trauma patient.” Id. at 316. McGirt was also given an oxygen mask. Id.
Thompson testified that, as the medics worked, McGirt identified Magnan as the person who shot her. Id. at 299. The district court did not abuse its discretion in finding that, under these circumstances, McGirt was still under the stress of having been shot twice when she. made this statement.
Magnan argues that McGirt’s statement cannot be an excited utterance because it was offered in response, to a medic’s question,[1] but the spontaneity of the statement is only one factor courts should consider. See Pursley, 577 F.3d at 1220-21. The fact that McGirt was responding to a question does not outweigh the fact that she was still at the. scene, gravely injured, and surrounded by emergency responders, The amount of time between the event and the statement, the nature of the event; the subject matter of the statement, the condition of the declarant; and the absence of self-interest all indicate that this was an excited utterance. See id.
Magnan also argues thát McGirt’s statement cannot be an excited utterance because hér “condition was undeniably grave” and “she was likely drunk.” Although these factors could impact the reliability of the statement (and were appropriately raised on cross-examination), the appropriate weight to afford' a witness’s testimony is for the jury to decide; these questions of reliability do not undercut the district court’s conclusion that McGirt’s statement was an excited utterance. See Michigan v. Bryant, 562 U.S. 344, 369 n.12, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011) (recognizing that juries must determine the reliability of testimony and noting that the excited utterance exception to the rule against hearsay remains widely supported in spite of criticism that “excitement impairs [the] accuracy of observation as well as eliminating conscious fabrication” (quoting Advisory Committee’s Notes on Fed. *1298 Rule Evid. 803(2))). In fact, McGirt’s “grave” condition strengthens the argument that she was still under the stress of being shot.
Finally, Magnan argues that McGirt was shot in the back of the head and that the house was dark, so there is no evidence that she saw the shooter. I cannot find any place in the record where this was argued to the district court, and Magnan makes no attempt to argue that it was plain error. See United States v. Faust, 795 F.3d 1243, 1251 (10th Cir. 2015). Further, the testimony of Bernhardt and West indicates that McGirt heard Magnan when he entered the house and saw him when he shot Karen. ROA vol. II, at 321, 612-14.
2. Bernhardt
For the same reasons, Bernhardt’s testimony regarding McGirt’s statement is also admissible as an excited utterance. Bernhardt testified that McGirt was transported to the hospital by ambulance and then by helicopter. Id. at 317, 322. While in the ambulance, McGirt was unstable, had low blood pressure, had an elevated pulse, was weak, was pale, and was in shock, indicating that her body was shutting down in response to trauma. Id. at 319. Bernhardt testified that she did not expect McGirt to survive. Id. at 322. It was during this ambulance ride that McGirt again identified Magnan as the person who shot her. Id. at 321. Again, the district court did not abuse its discretion in finding that, under these circumstances, McGirt was still under the stress of having been shot twice when she made this statement.
Magnan argues that any stress McGirt was under at the time of this statement was caused by the work of the medics, not by the event of being shot. Aplt. Br. at 23. This argument is specious. The medics were present only because McGirt had been shot twice and was gravely injured. Further, Magnan openly admits that “McGirt’s condition ha[d] not dramatically improved.” Id.
Magnan also argues that too much time had passed since the startling event, and that McGirt’s statement was not spontaneous, but in response to a question. Id. at 23-24. Again, we must consider all the factors together. See Pursley, 577 F.3d at 1220-21. The facts that McGirt responded to a question and that approximately two hours had passed since she was shot, do not outweigh the facts that she was in an ambulance on her way to a helicopter transport to the hospital, her body was shutting down due to trauma, and medics were working continuously to keep her alive. The nature of the event; the subject matter of the statement, the condition of the declarant; and the absence of self-interest all indicate that this was an excited utterance. See id.
3. West
The district court also did not abuse its discretion in allowing West’s testimony regarding McGirt’s statements in the hospital. Magnan again concedes that there had been a startling event and that McGirt’s statement related to that event, but argues that too much time had passed since that event and that McGirt had had an opportunity to reflect. Aplt. Br. at 25-26.
If we were to review the admissibility of this testimony de novo, I might reach a different conclusion, but, given the fact-intensive nature of applying hearsay exceptions, the district court’s determination was not unreasonable. According to the testimony of West, she arrived at the hos *1299 pital the morning after the shooting while it was still dark. Id at 609. When she arrived, McGirt was in the ER trauma center. Id. at 610. West described McGirt as “scared” and “anxious.” Id. She testified that McGirt’s voice was “shaky and trembly.” Id. at 611. McGirt told West “that she was paralyzed from the breast down.” Id. While West was with McGirt, she noticed blood on McGirt’s pillow. Id. at 612. The doctor then came in, “checked it out,” and said “that it was a bullet wound,” apparently one previously unnoticed. Id. It was then that McGirt for a third time identified Magnan as the person who shot her. Id. at 612-14.
In particular, the fact that the doctor discovered an additional bullet wound during this conversation indicates that McGirt’s condition was so unstable that the doctors had not yet ascertained the full extent of her injuries, and also that McGirt was still learning new information about the severity of her condition. It is hard to say that McGirt was no longer under the stress of the event of being shot when her doctor was still in the process of assessing her very serious injuries. Given the gravity of McGirt’s condition and the testimony regarding her emotional state at the time of her statements to West, the district court did not abuse its discretion by concluding that McGirt was still under the stress of being shot just hours before.

. Responses to questions asked by police officers may be subject to more scrutiny, .see Frost, 684 F.3d at 974, but the questions here were asked by a medic.